No. 19,366.

BRENT SMITH, ET AL. *v.* WELFARE DEPARTMENT OF THE CITY AND COUNTY OF DENVER, ROBERT W. BELL, ET AL.

(355 P. [2d] 317)

Decided September 13, 1960.   Rehearing denied October 3, 1960.

Mr. STEVENS PARK KINNEY, for plaintiffs in error.

Mr. DONALD E. KELLEY, Mr. FRANK A. ELZI, Mr. ROBERT A. POWELL, for defendants in error.

*In Department.*

Opinion by MR. JUSTICE DAY.

THIS case involves a motion to set aside a consent to

relinquishment and adoption of a baby girl given by the child's natural parents in the juvenile court of Denver. After hearing evidence for and against the motion, the trial court denied relief, and plaintiffs in error, the natural parents, bring this writ of error.

The Smiths were married on April 25, 1958, in Seattle, Washington. Shortly thereafter they moved to and established residence in Denver. Brent Smith was 20 years old at the time, his wife 19. A child was expected shortly, and in September they arranged through the Department of Welfare to have it delivered at Colorado General Hospital. It was born on September 25th.

On October 3rd, the Smiths met with Mrs. Beckwith of the Department of Welfare concerning the relinquishment of their child. They stated to her that due consideration and discussion had taken place between them and a decision reached that it would be best to give up the baby. They explained they were unable to care for the child on Mr. Smith's salary, and further that since the child was conceived prior to their marriage, they and their parents, all of social prominence in their home city, would be humiliated to have anyone learn of its birth. They also explained that their parents would cut off aid for Mr. Smith's further education if they knew of the child. Miss Beckwith discussed these matters with the Smiths and informed them of the seriousness and finality of the step they were about to take. They informed her that they were confirmed in their wish to relinquish the child and urged that the proceedings be hurried, as they were packed and ready to return home for resumption of Mr. Smith's schooling.

Miss Beckwith arranged for the filing of the petition for relinquishment in the juvenile court on October 6th. On the same day a hearing was held before a referee of that court, pursuant to C.R.S. '53, 22-5-4, who again made certain that the parents wished to give up their child. The final order of relinquishment was then entered.

The Smiths left Denver to return to Seattle and re-

quested that notice of adoption be sent to them. No notice was sent although the child was placed and an interlocutory decree of adoption entered on December 17, 1958. Several months later Mrs. Smith's mother learned that a child had been born to her daughter in Denver, and, upon being advised of all of the facts, volunteered to aid the young folks if they wanted to have their child returned. This motion to set aside the relinquishment and adoption proceedings was then filed, with the grandmother as the dominant, though not the nominal party.

The Smiths present ten specific points for reversal of the judgment. The question, which is determinative, is: "Were the relinquishment proceedings under the circumstances shown void?" This question is answered in the negative.

■ There is no lack of jurisdiction in the court and no allegation of coercion, duress or pressure exerted upon the parents to induce them to give up their child. They testified that they had acted freely, had known the contents of the documents they signed, and had been advised of the consequences and finality of their acts. They urge complete avoidance on the ground that they did not receive *proper* counseling from the Department of Welfare.

■ The statute alleged to be violated is C.R.S. '53, 22-5-2, which provides:

" * * * that the relinquishing parent has been offered advice designed to apprise such parent of the consequences of his act * * *."

The Smiths admit that they were fully advised of the seriousness of this contemplated relinquishment in the proceedings before the juvenile court by both Miss Beckwith and the court referee, notwithstanding they willingly and voluntarily sought to divest themselves of all legal rights and obligations with respect to the child. The purpose of the statutory requirement involved is to prevent the relinquishment of a child by parents who do

not realize the seriousness and finality of their acts. It does not provide that the Department of Welfare or the court should argue with the parents concerning the reasons for their relinquishment or seek to thwart the exercise of their free and voluntary will. There was substantial compliance with the statute.

We do not, however, give our approval to the hasty procedure followed by the juvenile court in this case. Although no time limit is prescribed by statute, prudence dictates that such proceedings should not be handled with the urgency shown here. Had a reasonable time elapsed between the filing and the hearing of the petition, and the court itself examined into the facts, it might have found reasons why the relinquishment was not advisable under the circumstances. This would then give protection to the one having the paramount right — the child. *In re Schmidt's Will*, 85 Colo. 28, 273 Pac. 21. We have said "that the initiation of any proceedings in a court in which the rights, status and welfare of an infant may be affected immediately establishes the infant's relation to the court as that of its ward." *McQuade v. McQuade*, decided August 22, 1960.

In a successful adoption proceeding a natural relationship with attendant natural rights is superseded by an artificial relationship. Generally the child is too young to accede to or oppose the action in which he is the central figure. In view of the helpless plight of the child, courts should act with caution and circumspection in adoption proceedings. In the consideration of these interests the court should ever bear in mind that the child has a natural right to the love, companionship, guidance and support of his natural parents. Every effort commensurate with the welfare of the child should be exerted by the court to prevail upon the natural parents to accept and undertake their duties toward their child.

But once the order for relinquishment has been granted it cannot be reversed except where the court

lacks jurisdiction or when consent of the parents is obtained through fraud, overreaching or duress. This case falls short of such compelling reasons, particularly in the light of the statement of the parties that they believed the grandmother would react in one manner when, in fact, she reacted quite differently. This type of reason does not even approach the status of a legal mistake or misunderstanding. See cases annotated in 24 A.L.R. (2d) 1127, §8. Policy dictates that persons assuming the role and responsibilities of adoptive parents be assured that in doing so they are not adopting a law suit in the bargain.

■ Having determined that the relinquishment proceedings were not void, we believe that *Graham v. Francis,* 83 Colo. 346, 265 Pac. 690, is controlling as to the issue of failure to give notice to the Smiths of the pending adoption of their child. In that case we noted that since the mother had abandoned and deserted the child, she had no right to receive notice of the child's adoption. A valid relinquishment divests the parents of all legal rights in their child, therefore no notice of adoption proceedings need be given. C.R.S. '53, 22-5-6.

Perceiving no error in the record, the judgment is affirmed.

MR. JUSTICE FRANTZ and MR. JUSTICE DOYLE concur.