311 So.2d 444

**Mary Louise Aiken LEIGH**

v.

**Samuel David AIKEN.**

**Civ. 468.**

Court of Civil Appeals of Alabama.

April 16, 1975.

Hare & Hare, Monroeville, for appellant.

No brief for appellee.

Richard L. North, St. Louis, Mo., for amicus curiae, National Juvenile Law Center.

Dawson & McGinty, Scottsboro, amicus curiae, in support of the minor child.

WRIGHT, Presiding Judge.

This is an appeal from a decree denying modification of a prior decree granting custody of a child.

The history of the case up to this appeal is as follows: The appellant, mother of the child, and appellee, father of the child, were divorced for incompatibility on August 16, 1973. Incorporated in the decree was an agreement of the parties as to division of property, custody and support of three children. The two older children were young men of the ages of 21 and 20. The youngest child was Jamie, age 12. By agreement his custody was granted to the mother with visitation rights to the father. It was further agreed that the father would pay $75.00 per month as support for Jamie.

On March 11, 1974, apparently in response to petition for citation for contempt filed by both parties, the court entered a decree requiring fulfillment by each party of the obligations set out in the separation agreement. This decree amplified the custody provisions of the agreement by setting out specific days and times for the exercise of visitation rights of the father with Jamie.

On July 16, 1974, another decree was entered implementing and enforcing the agreement and provisions of the prior decrees. The court further stated in the decree that if further proceedings were filed in the case by either party, the case would be transferred from Tuscaloosa County to Monroe County, where the parties resided.

On the 8th day of August, 1974, the expected occurred. The mother filed a new petition charging that the privileges of visitation given the father by the prior decree were detrimental to Jamie; that Jamie was afraid of his father and did not wish to visit with him; that forcible visitation was causing Jamie to be highly nervous and mentally ill. Temporary order of suspension of visitation privileges was requested pending hearing. The Tuscaloosa Court directed the case to be transferred to Monroe County.

On August 10, 1974, the Monroe County Circuit Court entered a temporary restraining order enjoining the father from exercising visitation privileges pending a hearing on August 14. The father answered the petition and filed a cross petition charging interference with rights of visitation and undue influence on Jamie by the mother prejudicing him against his father.

The matter came on to be heard orally by the court on the 14th and 16th of August. Extensive testimony was presented by each party. The court, after insistent requests by both counsel, talked with Jamie in camera. Decree was entered on August 16th denying each petition, dissolving the temporary order and directing compliance with the decree of March 11, 1974 as to custody and visitation.

■ The mother appeals assigning two basic errors. The first charges error in refusal of the court to permit Jamie to be presented by her as a witness in open court. The second error charged is that of

failure by the court to appoint a guardian ad litem to represent Jamie in the case. In support of the assigned errors, counsel for appellant has submitted a brief. Upon request, the court permitted two amicus curiae briefs to be filed. Such amicus curiae are prefaced as being filed on behalf of the minor child. We have not accepted them in such posture, as the child, Jamie, is not a party to the action, though he may be said to have an interest therein. We have accepted such briefs as supporting the contention of appellant, stated in her brief.

As to the first assignment of error, the record is not clear as to what occurred in the trial court. At the beginning of the hearing counsel for the father moved that Jamie be examined in chambers. The court responded by stating he did not know at that time whether he would allow such examination because he. was concerned about putting the child between the parents. Counsel for appellant stated that he agreed with the court's position. At the conclusion of the hearing, counsel for appellant requested that Jamie be allowed to testify. It is not clear whether such request was for in camera examination or in court with cross-examination. The judge again responded to the request by stating that he was not going to permit examination in open court. He said that he might talk to Jamie in his chambers, but he had not decided. The judge then asked if counsel wished to argue the matter or if they wanted him to talk to Jamie or did they want to argue the case and submit it. The only response was that counsel for appellant stated that he wished to call a rebuttal witness.

Subsequently, the court did talk with Jamie in chambers and apparently received from him an expression of desire in the matter. It is thus unclear from the record what the court was requested to do that it did not do.

The premise of appellant in argument is that a minor child of sufficient age should be permitted to testify on any material issue and particularly on his desires and preferences in a matter involving his custody, and that such testimony should be taken in open court subject to cross-examination. Appellant founds such premise on constitutional grounds and in particular the due process clause of the Fourteenth Amendment of the United States Constitution.

We do not perceive that due process rights of a child are involved in a proceeding to determine custody. The institution of any proceeding invoking the equity jurisdiction of the court as to an infant, immediately causes such infant to become a ward of the court under the common law principle of parens patriae. Ayers v. Kelley, 284 Ala. 321, 224 So.2d 673; Wise v. Watson, 286 Ala. 22, 236 So.2d 681. The question of its custody comes under the control of the court in the exercise of its broad judicial discretion. Such discretion is not unlimited or arbitrary but is subject to the rule of determination of what is to the best interest and welfare of the child. Anonymous v. Anonymous, 277 Ala. 634, 173 So.2d 797.

It has been said by the Supreme Court of this state that in a custody proceeding the court "does not proceed upon the theory that the petitioner, whether father or mother, has a cause of action against the other, or indeed against anyone. He acts as parens patriae to do what is best for the interest of the child. He is not adjudicating a controversy between adversary parties, to compose their private differences. He is not determining rights as between a parent and child, or as between one parent and another." Cleckley v. Cleckley, 250 Ala. 78, 33 So.2d 338; Ex parte White, 245 Ala. 212, 16 So.2d 500. Any matter affecting the rights, interests or welfare of the ward is within the peculiar jurisdiction and discretion of the court. Stephens v. Stephens, 253 Ala. 315, 45 So.2d 153. Protection of the child from the emotional experience of expressing a preference as between one parent or an-

other in open court in their presence and being subjected to cross-examination is within the discretion of the court.

In arguing the error of the refusal of the court to permit the calling of the child as a witness, appellant goes in two divergent directions. She first contends denial of due process to Jamie because his examination and cross-examination in open court was not permitted. In the same argument, she submits that her rights were violated in that she could not call Jamie as her witness. We must ask whose welfare is she concerned with? In this instance Jamie was heard by the court. There is no indication in the record that he was not given full opportunity to present his views, desires and information known to him to the court. We make this statement not to convey that we decide here that due process required the court to examine the child. We do not so hold. We hold only that under the facts of this case there was no denial to Jamie of the opportunity to be heard.

We further hold that in pursuance of its duty of protecting the welfare of the child, the court under the facts presented, did not withhold from appellant any constitutional nor statutory right by refusing to allow her to present Jamie as her witness and subject him to direct and cross-examination in open court.

The second assignment of error is that the court erred in failing to appoint a guardian ad litem for the child. Argument in support of the assignment contends a constitutional question of due process. We have examined the record and fail to find any such proposition submitted to the trial court. There is no request by either side for the appointment of a guardian ad li-

tem. We find no citation, either in appellant's brief or those submitted amicus curiae, holding that failure or refusal to appoint a guardian ad litem to represent the interest of minors in child custody cases in equity is a violation of the due process clause of the Fourteenth Amendment. We have been cited to numerous law review articles expressing the views of the authors as to the need for representation of the interest of children by counsel or guardian ad litem in custody cases.[1] Some of such articles present the view that due process requires such representation. The latter articles are post In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967). There is also presented the view of the Wisconsin Supreme Court expressed in several cases and in a procedural rule adopted under the rule-making power of the court in 1971.[2] The effect of the cited cases and the rule is that protection of the best interest of the child may, in some cases, require the assistance of a guardian ad litem for the child. As we understand the import of the decisions and the rule, the purpose is to assist the court in fulfilling its duty as parens patriae, and not to satisfy right of due process for the child.

Of course, this state has always recognized the importance of the role of the court in pursuing its duty of protecting the best interest of the child. The courts of Alabama have examined witnesses, called witnesses and used investigators from social agencies for this purpose. We do not hold that a guardian ad litem could be appointed in a child custody case under the present provisions of rule 17(c), Alabama Rules of Civil Procedure, but such interpretation could be possible. In any event, our Supreme Court has, as does the Wisconsin Supreme Court, rule-making power,

1. Hansen, Guardians Ad Litem in Divorce and Custody Cases: Protections of the Child's Interests, 4 J. of Family L. 181 (1964); Inker and Perretta, A Child's Right to Counsel in Custody Cases, 5 Fam.L.Q. 108 (1971); Podell, The "Why" Behind Appointing Guardians Ad Litem for Children in Divorce Proceedings, 57 Marq.L.Rev. 103 (1973).

2. Edwards v. Edwards, 270 Wis. 48, 70 N.W. 2d 22, 71 N.W.2d 366 (1955); Kritzik v. Kritzik, 21 Wis.2d 442, 124 N.W.2d 581 (1963); Wendland v. Wendland, 29 Wis.2d 145, 138 N.W.2d 185 (1965); Dees v. Dees, 41 Wis.2d 435, 164 N.W.2d 282; Weichman v. Weichman, 50 Wis.2d 731, 184 N.W.2d 882 (1971); Wis.Stats. Sec. 247.045 (1971).

and could promulgate such rule if deemed appropriate.

We recognize merit in the views of those who advocate appointment of a guardian ad litem to represent the interest of children in custody cases. We recognize that often the parents in such cases are seemingly more concerned with exercising their spite and dislike for one another than in promoting the welfare of their child. We recognize that agreements as to custody are sometimes founded upon coercion, blackmail, consideration of property or other personal reasons not necessarily related to the best interest of the child. It is the burden and responsibility of the court to look into and through such reasons, using its experience, insight or other appropriate methods. From our experience, we are convinced that the trial courts are usually diligent to do so.

■ On the other hand, we consider the state has a compelling interest in not making a child a party in exercising its peculiar jurisdiction in custody cases. To require a child to be made a party and participate in the case through counsel will immediately present an adversary posture. The child becomes the adversary of one parent or the other, and under some circumstances both. There is a great difference between being an adversary of the state in a juvenile delinquency proceeding and being an adversary with parents in a custody proceeding. In the juvenile proceeding a parent and the child are usually on the same side and against the state. In the custody case the child must be aligned with or against a parent. The court in exercising its discretion in a custody case is not bound by the preponderance of the evidence. It may or may not decide custody in accordance with the desire of the child or in favor of the parent with whom it is aligned in the proceeding. What chance of a satisfactory relation is there when custody is ultimately given to a parent who has been the heated and perhaps maligned adversary?

If counsel is appointed, whose view does he represent, his own or that of the child? Is the child to be a witness and subject to cross-examination? Is the child to have the right of appeal?[3] How is the cost of counsel and his expense of investigation to be assessed?

We have presented questions without answers. It is our view that if counsel is appointed by the court or by the child, if 14 years of age or over (Rule 17, ARCP), all of these questions must be answered.

We consider that to throw a child into the ring as an adversary with its parents would probably result in irreparable damage to the parental relationship already in a weakened condition due to preliminary infighting. It would have the traumatic and psychological result for the child that it is the purpose and duty of the court as parens patriae to protect it from. The inoculation of the child with the serum of so-called due process would likely destroy the patient.

■ There is another distinctive peculiarity of custody cases and decrees. They are interlocutory in nature, not final; the court retains a continuing jurisdiction. The decree is subject to modification if circumstances change affecting the best interest of the child. Wise v. Watson, 286 Ala. 22, 236 So.2d 681; Atkinson v. Atkinson, 45 Ala.App. 428, 231 So.2d 753. The role of the court as protector of the child does not end so long as it is a minor or remains within the jurisdiction of the court

The briefs amicus curiae, quoting from law review articles, attack the parens patriae theory of protecting the welfare of children in child custody cases with statements that the child is the pawn in the battle between selfish and uncaring parents; that the court decides custody according to the best case presented by a parent; that a

---

3. In this state, a party has an appeal or other form of review as a matter of right. Title 7, Sec. 754, Code of Alabama (1940).

child of competency as a witness is ignored; that the child is a football in the game of life; that the judge is too caught up in the adversary proceedings between the parents to properly consider the best interest of the child. Such statements are conclusions and opinions and are extremely debatable to say the least. Even the writers do not advocate the discarding of the parens patriae principle, but make such accusations to indicate failures or shortcomings to buttress the contention that by providing the child with legal counsel and enabling it to jump personally into the fray, such deficiencies of the system will be cured.

The authors of the briefs concede that the court should not be bound by the evidence presented by a guardian ad litem nor by the opinion or desire of the child expressed as a witness. They state that the duty of the court should remain the same —protecting the best interest and welfare of the child. However, if counsel is appointed requisites of due process will be secured.

What is this "due process" which appellant and friends of the court demand? It was truly said in Hannah v. Larche, 363 U.S. 420, 80 S.Ct. 1502, 4 L.Ed.2d 1307 (1960),

"'Due process' is an elusive concept. Its exact boundaries are undefinable, and its content varies according to specific factual contexts. . . . Therefore, as a generalization, it can be said that due process embodies the differing rules of fair play, which through the years, have beome associated with differing types of proceedings. Whether the Constitution requires that a particular right obtain in a specific proceeding depends upon a complexity of factors. The nature of the alleged right involved, the nature of the proceeding, and the possible burden on that proceeding, are all considerations which must be taken into account."

Mr. Justice Harlan in concurring in part and dissenting in part in "Gault" said:

"The Court has repeatedly emphasized that determination of the constitutionally required procedural safeguards in any situation requires recognition both of the 'interests affected' and of the 'circumstances involved.' (Citations omitted.)

"In particular, a 'compelling public interest' must, under our cases, be taken fully into account in assessing the validity under the due process clauses of state or federal legislation and its application." (Citations omitted.)

The public policy that the state has a compelling interest in determining the best interest and welfare of a child brought within the protective jurisdiction of its courts sitting in equity is beyond dispute. Such protection extends to the procedural process of exercising its jurisdiction as well as future custody disposition. The procedure of determining the proper custody of a minor child through a non-adversary proceeding by a court of equity guided only by the polestar of the best interest and welfare of the child does not violate principles of fundamental fairness nor of due process. Whether additional procedural practice such as discretionary appointment of a guardian ad litem for the child would be of value to the court in reaching its ultimate and most difficult determination and would thus better serve the welfare of the child is a matter for consideration by the rule-making body of the state, the Alabama Supreme Court.

Affirmed.

BRADLEY and HOLMES, JJ., concur.