**PETRO–LEWIS CORPORATION, Petitioner,**

v.

**DISTRICT COURT, FOURTH JUDICIAL DISTRICT, EL PASO COUNTY, Colorado, and the Honorable William E. Rhodes, one of the judges thereof, Respondents.**

No. 85SA185.

Supreme Court of Colorado,
En Banc.

Oct. 14, 1986.

Holme Roberts & Owen, Richard R. Young, Lawrence Ponoroff, Colorado Springs, for petitioner.

Tegtmeier & Sears, P.C., Richard L. Tegtmeier, Colorado Springs, for respondents.

ERICKSON, Justice.

In this original proceeding, we issued a rule to show cause why Donna Stewart, defendant in the action below, should not be compelled to comply with certain requests for discovery. We now make the rule absolute and remand for further proceedings consistent with this opinion.

I.

Defendant Western Hydrocarbons and Development Corporation (Western) is a Colorado corporation with its principal place of business in Colorado Springs, Colorado. Plaintiff Petro-Lewis Corporation (Petro-Lewis) is a Colorado corporation with its principal place of business in Denver, Colorado. Between January 1984 and November 1984, Petro-Lewis sold butane and isobutane on credit to Western for an agreed price of $1,391,445.68. Western in turn sold the butane and isobutane to Elgin Petroleum Limited (Elgin) for an amount in excess of $1.3 million. Western made no payments on its account with Petro-Lewis, and in November 1984 Petro-Lewis sued Western for the amount due.

After the action against Western was commenced, Jack D. Doyle, vice-president and half-owner of Western, testified by affidavit that Clifford Stewart, Western's president, had surreptitiously deposited the proceeds of the Elgin sale into an account on which he was the only signatory. Doyle further testified that Stewart used this account to transfer substantially all of the Elgin proceeds to his wife, Donna Stewart, to his brother, Raymond Stewart, and to himself.

In light of Doyle's affidavit, Petro-Lewis amended its complaint to join Clifford, Donna and Raymond Stewart as defendants. Petro-Lewis alleged in pertinent part: (1) that Western improperly transferred property to Clifford, Donna and Raymond Stewart; (2) that those transfers were in fraud of Western's creditors and therefore void; and (3) that Clifford, Donna and Raymond Stewart were personally liable to the extent they transferred, diminished, or placed the funds received from Western beyond the reach of Petro-Lewis. In May of 1985, Petro-Lewis again amended its complaint, alleging (1) that Clifford, Donna and Raymond Stewart conspired to defraud Petro-Lewis, rendering each jointly and severally liable for the entire debt, and (2) that Petro-Lewis was entitled to real property purchased by Donna Stewart with funds fraudulently obtained from Western.

In her answer, Donna Stewart denied all liability to Petro-Lewis. She admitted on deposition that she was an officer for Western, but denied that she had performed any services for the company.

On February 11, 1985, Petro-Lewis served interrogatories, request for admissions, and request for production of documents on Donna Stewart. Petro-Lewis' discovery was directed primarily to the acts and conduct of Mrs. Stewart, and her relationship with Western and third parties. Eighteen of the twenty-one requests for admission seek admissions involving eight checks Donna Stewart received that were drawn on Western's account. Two requests seeks confirmation that Donna Stewart maintained two specific bank accounts. The final request for admission (No. 21) is the only discovery request that directly mentions Donna Stewart's husband by name, and it requests an admission that Donna Stewart received a certain check drawn on a bank account maintained by her husband.

Many of Petro-Lewis' requests and interrogatories to Donna Stewart may seek information about her husband, but only by implication. Most of these seek information about certain financial transactions and the names of persons who were involved in those transactions. The following interrogatories are typical examples:

10. [W]ith respect to each item of precious jewelry ... identify the person from whom you received such item of jewelry or gem.

19. State whether or not you have ever borrowed money from defendant Western Hydrocarbons and Development Corp. and ... identify the person who negotiated such loan....

21. Please state your current residential address and whether you are (individually or jointly with another person) the record owner of such property, and, if not, identify the person who owns such property and describe the basis upon which you are entitled to possession thereof.

The request for production of documents primarily seeks documents related to the transactions mentioned in the other discovery requests.

Mrs. Stewart refused to comply with Petro-Lewis' discovery, asserting that the requested information was privileged under section 13–90–107(1)(a), 6 C.R.S. (1985 Supp.), which provides:

*A husband shall not be examined for or against his wife without her consent, nor a wife for or against her husband without his consent;* nor during the marriage or afterward shall either be examined without the consent of the other as to any communications made by one to the other during the marriage....

(Emphasis added.)

After exhausting informal steps to resolve the matter, Petro-Lewis moved for an order to compel Mrs. Stewart to respond to its discovery. The motion to compel was denied by the trial court. Petro-Lewis now seeks mandamus in this court to compel the trial court to grant the motion.

We hold that a party may be compelled to comply with all proper requests for discovery which pertain to that party's liability, even though some responses may be adverse to the party's spouse. Dis-

covery when the marital privilege is invoked would not extend to matters that relate solely to Mr. Stewart's individual liability. We decline to rule on the extent to which Mrs. Stewart may be examined at trial. Discovery, where the marital privilege is in issue, must be determined on an *ad hoc* basis.

## II.

C.R.C.P. 26(b)(1) permits discovery "regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action...." Mrs. Stewart does not claim that Petro-Lewis' discovery is not relevant. Rather, Mrs. Stewart contends that the matters into which Petro-Lewis seeks discovery are subject to the marital privilege set forth in section 13–90–107(1)(a). Because Petro-Lewis has not sought disclosure of confidential marital communications between Clifford and Donna Stewart, we need not consider here whether such communications are discoverable by Petro-Lewis.[1] We address only whether compliance by Donna Stewart with Petro-Lewis' interrogatories, requests for admissions and requests for production of documents is tantamount to testimony against her spouse without his consent.

▮ The testimonial provisions of the marital privilege are designed to protect the sanctity and tranquility of the marital relationship from the disruption attendant to adverse spousal testimony. *Archina v. People*, 135 Colo. 8, 24–25, 307 P.2d 1083, 1092 (1957); *McAllister v. McAllister*, 72

Colo. 28, 32, 209 P. 788, 790 (1922). The testimonial privilege applies to in-court testimony, as well as depositions, interrogatories, requests for admissions, and other forms of testimonial discovery.[2] *See Frey v. Superior Court*, 237 Cal.App.2d 201, 46 Cal.Rptr. 747 (1965); *Forman v. Andersen*, 181 Neb. 528, 149 N.W.2d 525 (1967). *Cf. Clark v. District Court*, 668 P.2d 3, 8 (Colo.1983) (physician-patient and psychologist-client privileges prohibit not only in-court testimonial disclosures but also pre-trial discovery of information within the scope of the privilege).

Although the marital testimonial privilege has existed for centuries, it has been severely criticized. It has been described as the "merest anachronism in legal history, and an indefensible obstruction to truth in practice." 8 J. Wigmore, *Evidence* § 2228 at 221 (1961). It has been called a rule which "grant[s] to every man a license to commit all sorts of wickedness, in the presence and with the assistance of his wife." 5 J. Bentham, *Rationale of Judicial Evidence* 340 (1827). The Supreme Court has called it a contravention of "the fundamental principle that 'the public ... has a right to every man's evidence.'" *Trammel v. United States*, 445 U.S. 40, 50, 100 S.Ct. 906, 912, 63 L.Ed.2d 186 (1980) (quoting *United States v. Bryan*, 339 U.S. 323, 331, 70 S.Ct. 724, 730, 94 L.Ed. 884 (1950)). Finally, we have held that the privilege obstructs the rightful search for truth, and must be strictly limited. *Keeler v. Russum*, 68 Colo. 196, 198, 189 P. 255, 256 (1920).

1. We note that some courts have held that confidential marital communications concerning the commission of a crime or the perpetration of a fraud are not privileged. *See, e.g., United States v. Kahn*, 471 F.2d 191 (7th Cir.1972) (marital privilege does not protect conversations between husband and wife concerning commission of a crime and not the privacy of their marriage), *rev'd on other grounds*, 415 U.S. 143, 94 S.Ct. 977, 39 L.Ed.2d 225 (1974); *United States v. Price*, 577 F.2d 1356 (9th Cir.1978) (statements by a spouse in furtherance of a criminal conspiracy are not protected by the marital privilege), *cert. denied*, 439 U.S. 1068, 99 S.Ct. 835, 59 L.Ed.2d 33 (1979). While we have adopted the so-called "crime-fraud" exception with respect to communications between attor-

ney and client, *see Caldwell v. District Court*, 644 P.2d 26 (1982), we have not addressed its application to communications between husband and wife.

2. Because we hold that Mrs. Stewart may not invoke the marital privilege to avoid Petro-Lewis' discovery, we need not decide whether and to what extent the privilege applies to the testimonial aspects of the production of documents. *Cf. United States v. Doe*, 465 U.S. 605, 104 S.Ct. 1237, 79 L.Ed.2d 552 (1984) (the act of producing documents may in certain instances involve testimonial self-incrimination under the Fifth Amendment).

Not surprisingly, the testimonial privilege has been eroded over the years. In 1980, the Supreme Court in *Trammel v. United States*, 445 U.S. 40, 100 S.Ct. 906, 63 L.Ed.2d 186 (1980), held that in federal criminal prosecutions the testimonial privilege could be asserted only by the testifying spouse. The court noted:

[Testimonial privileges] must be strictly construed and accepted "only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means of ascertaining truth." *Elkins v. United States*, 364 U.S. 206, 234 [80 S.Ct. 1437, 1453, 4 L.Ed.2d 1669] (1960) (Frankfurter, J., dissenting).

. . . .

[T]he existing rule should be modified so that the witness-spouse alone has a privilege to refuse to testify adversely; the witness may be neither compelled to testify nor foreclosed from testifying. This modification—vesting the privilege in the witness-spouse—furthers the important public interest in marital harmony without unduly burdening legitimate law enforcement needs.

*Id.* at 50, 53, 100 S.Ct. at 912, 913.

Other courts have recognized an exception to the privilege where the disputed testimony concerns a fraud perpetrated by both husband and wife. *See, e.g., Kerr v. Clements*, 148 Pa.Super. 378, 384, 25 A.2d 737, 740 (1942) ("It was not intended [by the testimonial privilege] to supply the means of protecting another in a fraudulent transaction nor to render husband and wife secure in the enjoyment of the fruits of fraud."); *Kine v. Forman*, 205 Pa.Super. 305, 310, 209 A.2d 1, 3 (1965) ("The public policy which protects as confidential the private communications or acts by the husband and wife does not necessarily extend to those communications or acts which are in furtherance of a fraud, where the proceedings are based upon a civil action.").

Finally, many courts have avoided the harsh consequences of the testimonial privilege by limiting the circumstances under which testimony is considered "for or against" a spouse. In *Horn v. Hurwitz*, 76 Colo. 389, 231 P. 1116 (1925), we held that a wife could be compelled to testify concerning property to which the husband had disclaimed any interest. In *Horn*, the plaintiff had brought an action against a husband and wife for possession of real estate purchased by the plaintiff at an execution sale against the husband. In an apparent effort to avoid the execution sale, both husband and wife claimed that the property was owned solely by the wife. We held that the wife could be compelled to testify, notwithstanding her husband's obvious interest. In *Frey v. Superior Court*, 237 Cal.App.2d 201, 46 Cal.Rptr. 747, 749 (1965), the California District Court of Appeal held that a husband and wife could not refuse to testify concerning their individual liability on loan guarantees executed by each. The court concluded that the testimony would bear only on their individual liability, and would not be "for or against" their spouse. In *Menzel v. Tubbs*, 51 Minn. 364, 53 N.W. 653 (1892), *supplemental opinion*, 52 Minn. 31, 53 N.W. 1017 (1892), the Minnesota Supreme Court held that a husband and wife may be compelled to testify for or against themselves in an action for foreclosure against adjacent lots owned separately by each. The court noted that "[w]hen husband and wife are parties to an action, there is no reason why either may not be examined as a witness for or against himself or herself alone." *Id.* at 373, 53 N.W. at 656.

Many other examples may be found in the law. *See, e.g., Federal Deposit Insurance Corp. v. Alter*, 106 F.Supp. 316 (W.D. Pa.1952) (defendant husband may be deposed concerning the operation of a bank of which he was president and of which his co-defendant wife was a director; if privileged information is adduced, it may not be admitted at trial); *Frankenthal v. Solomonson*, 20 Wash. 460, 55 P. 754 (1899) (a wife, defendant in a garnishment action, may be compelled to testify in aid of execution against her husband; the testimony is

not "for or against" her husband); *Kusch v. Kusch,* 143 Ill. 353, 32 N.E. 267 (1892) (if there is no occasion for examining the wife as a witness in her own behalf, she is not a competent witness on behalf of her husband); *Saint Louis, I.M. & S. Railway v. Amos,* 54 Ark. 159, 15 S.W. 362 (1891) (husband and wife, joint plaintiffs in an action for personal injuries, may testify on their own behalf). *See generally* 2 J. Wigmore, *Evidence* § 613 (1979).

The testimonial privilege has not been entirely eroded, however. Many courts remain hesitant to compel a spouse to testify at trial where the testimony is admissible against both husband and wife. For example, it has been held in Colorado and in other states that a spouse to whom a conveyance by the other has been made may not be compelled to testify in an action against both spouses to set aside the conveyance as fraudulent. *See Jasper v. Bicknell,* 68 Colo. 308, 191 P. 115 (1920); *Niland v. Kalish,* 37 Neb. 47, 55 N.W. 295 (1893); *DeFarges v. Ryland,* 87 Va. 404, 12 S.E. 805 (1891); *Wolford v. Farnham,* 44 Minn. 159, 46 N.W. 295 (1890). These courts have reasoned that testimony by one spouse concerning a conveyance from the other, even though both are parties, is barred by the marital testimonial privilege.

A tension therefore exists between the need to compel a party to testify about his or her own liability, and the need to protect each spouse against the unconsented testimony of the other. The present case occupies a difficult space between these two competing policies. Although Petro-Lewis' requests for discovery are entirely relevant to Mrs. Stewart's liability, some of her responses may bear materially upon the case against her husband. Even though Petro-Lewis is not seeking Mrs. Stewart's testimony as a witness against her spouse, the discovery may constitute an examination of one spouse against the other.

█ We therefore must strike a balance between the responsibility each must take

for his or her own actions, and the privilege not to testify against one's spouse. Construing the privilege strictly, as we must, we find that the privilege must yield to Petro-Lewis' attempts to examine Mrs. Stewart as a party to this action who has affirmatively denied liability. At this stage of the proceedings, it is impossible to determine which of Mrs. Stewart's responses will implicate her husband, and which will not. The marital testimonial privilege may not be used as a shield against the discovery of relevant evidence of one's own liability. It may be that special safeguards must be taken at trial to protect the interests of the non-testifying spouse, but we need not reach that issue today.[3]

Accordingly, Petro-Lewis may obtain discovery from Mrs. Stewart concerning all matters relevant to her own liability to the plaintiff. The extent to which the privilege applies to Mrs. Stewart's testimony at trial is an issue to be determined by the trial court.

QUINN, C.J., does not participate.

---

**3.** Such precautions may include limited admissibility of Mrs. Stewart's testimony, or a bifurca-

tion of the trial below.