**In re MARRIAGE OF Pamela BOZARTH, Petitioner,**

**and**

**Nathan Bozarth, Respondent.**

**No. 88SC244.**

Supreme Court of Colorado, En Banc.

Oct. 2, 1989.

---

H.E. Carleno & Associates, P.C., H.E. Carleno, Littleton, for petitioner.

Sampson & Associates, Carolyn L. Sampson, Golden, for respondent.

Chief Justice QUINN delivered the Opinion of the Court.

■ The question in this case is whether the spousal testimonial privilege created by section 13–90–107(1)(a), 6A C.R.S. (1987), is applicable to a hearing on a motion for modification of child custody filed by the noncustodial father under circumstances where the custodial mother, who has remarried subsequent to the dissolution of her marriage to the father, invokes the spousal testimonial privilege in order to prohibit her present husband from testifying as to her care and treatment of the child. The district court ruled that the mother's invocation of the spousal testimonial privilege prohibited the father from calling the mother's present husband as a witness. In reversing the judgment and remanding the case for a new hearing, the court of appeals held that the spousal testimonial privilege does not apply to a child custody hearing. *In re Marriage of Bozarth*, 759 P.2d 794 (Colo.App.1988). We granted certiorari in order to review the court of appeals' decision. We now reverse the judgment and remand the case to the court of appeals with directions to consider the other issues raised but not resolved in the father's appeal to that court.

I.

The facts are essentially undisputed. The petitioner, Pamela Bozarth (mother), and the respondent, Nathan Bozarth (father), were married early in 1978, and their son, Joshua, was born later in that year. In 1981 the district court of Arapahoe County entered a decree of dissolution and awarded custody of Joshua to the mother. The mother subsequently married David Brady.

On January 24, 1985, the father filed a motion for modification of custody in the Arapahoe County District Court. The motion alleged that Joshua's present environment was a danger to his physical health or emotional development and that a modification of permanent custody was necessary to serve the best interests of the child. The district court ordered a custody evaluation to be conducted by the Department of Social Services and held a hearing on the father's motion for modification of custody on August 29, 1985.

During the custody hearing the father testified to his contacts with Joshua and described some abusive conduct of the mother toward the child. The father also presented testimony from a psychotherapist who had examined the mother and Joshua, and from a custody investigation counselor who prepared the custody evaluation filed with the court. The father then called the mother's present husband, David Brady, as a witness. After being sworn, Brady testified that he was presently married to the mother, and then seemed to imply that they were presently separated and that a dissolution petition may have been filed. His scant testimony on his relationship with the mother was as follows:

Q. Are you presently married to Pamela Brady, formerly Pamela Bozarth?

A. Yes.

Q. Are you still married at this time?

A. Yes. There's no divorce settlement yet.

Q. All right. Is that set for hearing?

A. No, not at this time.

After this preliminary testimony, the father sought to question Brady about his observations concerning the manner in which the mother treated the child during

her marriage to Brady. The mother objected to any such testimony on the basis that the spousal testimonial privilege created by section 13–90–107(1)(a), 6A C.R.S. (1987), prohibited Brady, her husband, from testifying either for or against her without her consent. The district court sustained the mother's invocation of the privilege and, at the completion of the hearing, denied the father's motion for a change of custody, concluding that the father had failed to establish the statutory requirements for an order modifying custody.[1]

The father appealed to the court of appeals, which reversed the judgment of the district court and remanded the case for a new hearing. The court of appeals was of the view that in a child custody hearing there is "a compelling necessity to scrutinize the relevant evidence as to each part[y's] fitness to be a custodian for both the protection of the children and for the sake of public policy." *Bozarth*, 759 P.2d at 795. Proceeding from this premise, the court went on to hold that in a child custody hearing, "where the issue is one of what custodian would be in a child's best interest, no husband-wife privilege exists and a spouse may testify as to observations made of the other spouse regarding parenting skills and as to communications between the spouses bearing on that issue." *Bozarth*, 759 P.2d at 796. Because of the court's resolution of this aspect of the case, it did not address two evidentiary issues raised by the father in his appeal filed with that court.[2]

We granted the mother's petition for certiorari in order to consider whether the court of appeals correctly ruled that the spousal testimonial privilege was inapplicable to the child custody hearing in this case.

## II.

The spousal testimonial privilege has ancient roots, 8 J. Wigmore, *Evidence* § 2227 (J. McNaughton rev. 1961), and has existed in statutory form in this state since 1883.[3] The statutory privilege in effect at the time of the custody hearing in this case was codified in section 13–90–107(1)(a), 6A C.R.S. (1987), and provided as follows:

(1) There are particular relations in which it is the policy of the law to encourage confidence and to preserve it inviolate; therefore, a person shall not be

1. Section 14–10–131(2), 6B C.R.S. (1987), states:
   (2) The court shall not modify a prior custody decree granting custody to one party unless it finds, upon the basis of facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child or his custodian and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the custodian established by the prior decree unless:
   (a) The custodian agrees to the modification;
   (b) The child has been integrated into the family of the petitioner with the consent of the custodian; or
   (c) The child's present environment endangers his physical health or significantly impairs his emotional development and the harm likely to be caused by a change of environment is outweighed by the advantage of a change to the child.

2. In his appeal to the court of appeals, the father claimed that the district court erred in excluding his testimony regarding the child's statements to him, which, according to the father, were indicative of the child's knowledge of marijuana and marijuana paraphernalia alleg-

edly seen by the child in the mother's home. The father also argued that the district court erred by admitting into evidence a stipulation, proposed by the mother in October 1983 but not signed by the father, concerning child support payments and visitation.

3. The 1883 statute cast the spousal testimonial privilege in terms of competency. It stated that no husband or wife shall be rendered competent to testify for or against each other as to any transaction or conversation occurring during the marriage, whether called as a witness during the existence of the marriage or after its dissolution, except in the following cases: when the wife would, if unmarried, be plaintiff or defendant; where the cause of action grows out of a personal wrong or injury done by one to the other, or grows out of the neglect of the husband to furnish the wife with a suitable support; or where the litigation concerns the separate property of the wife. The statute also stated that in any case in which an exception applied "the husband and wife may testify for or against each other in the same manner as other parties may under the provisions of this act." Ch. CVIII, sec. 5, § 3375, 1883 Colo.Sess. Laws 1148, 1150.

examined as a witness in the following cases:

(a) A husband shall not be examined for or against his wife without her consent, nor a wife for or against her husband without his consent; nor during the marriage or afterward shall either be examined without the consent of the other as to any communications made by one to the other during the marriage; but this exception does not apply to a civil action or proceeding by one against the other, a criminal action or proceeding for a crime committed by one against the other, or a criminal action or proceeding against one or both spouses when the alleged offense occurred prior to the date of the parties' marriage. However, this exception shall not attach if the otherwise privileged information is communicated after the marriage.

The plain terms of section 13–90–107(1)(a) create two distinct privileges with respect to spousal testimony. *People v. Lucero*, 747 P.2d 660, 666 (Colo.1987). The first is the privilege against adverse spousal testimony or what is sometimes referred to as the rule of spousal disqualification. *Id.* at 666. This privilege prohibits a husband from testifying "for or against his wife without her consent" and a wife from testifying "for or against her husband without his consent." § 13–90–107(1)(a), 6A C.R.S. (1987). Although the rule of spousal disqualification has been subjected to criticism as an historical anachronism, the modern justification for this privilege "is its perceived role in fostering the harmony and sanctity of the marriage relationship." *Trammel v. United States*, 445 U.S. 40, 44, 100 S.Ct. 906, 909, 63 L.Ed.2d 186 (1980). As long as there is a valid contract of marriage in existence at the time of the proffered testimony, the statutory privilege against adverse spousal testimony will apply to prohibit one spouse from testifying "for or against the other on any subject without the consent of that other spouse." *Lucero*, 747 P.2d at 666.

The second privilege created by section 13–90–107(1)(a) is the privilege against disclosure of spousal communications made to each other during the marriage. *Lucero*, 747 P.2d at 666. The statute expressly prohibits either spouse from being examined, without the consent of the other spouse, "as to any communications made by one to the other during the marriage." § 13–90–107(1)(a), 6A C.R.S. (1987). The statute expressly provides that the spousal communications privilege applies not only during the marriage but "afterward" also, with the result that communications between spouses during the marriage remain privileged, in the absence of some statutory exception, despite the termination of the marriage by death or divorce. *See* C. McCormick, *Evidence* § 66, at 145 (E. Cleary 2d ed. 1972); 8 J. Wigmore, *Evidence* § 2237 (J. McNaughton rev. 1961).

The version of section 13–90–107(1)(a) applicable to this case creates several exceptions to the two statutory privileges with respect to spousal testimony: first, the privileges do not apply to a civil action brought by one spouse against the other; second, the privileges are inapplicable to a criminal proceeding for a crime committed by one spouse against the other; and third, the privileges do not apply to a criminal proceeding against one or both spouses when the alleged crime occurred prior to the date of the marriage. Moreover, pursuant to the express language of the statute, the marital privileges do not attach "if the otherwise privileged information is communicated after the marriage".[4]

---

4. Section 13–90–107(1)(a), 6A C.R.S. (1987), was amended in 1988. Ch. 124, sec. 3, § 13–90–107(1)(a), 1988 Colo.Sess.Laws 707, 708. The amendments, which are not involved in this case, provide as follows:

(II) The privilege described in this paragraph (a) does not apply to class 1, 2, or 3 felonies as described in section 18–1–105(1)(a)(IV), C.R.S. In this instance, during the marriage or afterward, a husband shall not be examined for or against his wife as to any communications intended to be made in confidence and made by one to the other during the marriage without his consent, and a wife shall not be examined for or against her husband as to any communications intended to be made in confidence and made by one to the other without her consent.

(III) Communications between a husband and wife are not privileged pursuant to this

Because the effect of sustaining a claim of privilege is to limit the full disclosure of the facts in controversy, we have construed the privilege narrowly, so as to restrict its application to those situations expressly encompassed by the statutory language. *See generally Petro–Lewis Corp. v. District Court,* 727 P.2d 41 (Colo.1986); *Keeler v. Russum,* 68 Colo. 196, 189 P. 255 (1920); *White v. Bower,* 56 Colo. 575, 136 P. 1053 (1913); *Butler v. Phillips,* 38 Colo. 378, 88 P. 480 (1906). Our focus, however, has always been on the statutory text, and we have refrained from creating or enlarging exceptions beyond the clear import of the text. In our recent decision in *People v. Lucero,* 747 P.2d 660, for example, the People urged us to limit the scope of the privilege to confidential communications, and in effect to nullify the so-called spousal disqualification privilege, by reading such a limitation into the legislative statement of purpose in section 13–90–107(1)(a), which states that "[t]here are particular relations in which it is the policy of the law to encourage confidence and to preserve it inviolate." We rejected the People's proposed construction, stating:

> Even though the purpose expressed in the introductory language is narrower than the scope of the privilege set forth in section 13–90–107(1)(a), that introductory language cannot serve to negate the plain words of subsection (a) that one spouse "shall not be examined for or against" the other without the consent of that other spouse. Were we to accept the contruction put forth by the People, it would render the first clause of section 13–90–107(1)(a) meaningless.

*Lucero,* 747 P.2d at 666. In so doing, we declined to follow the United States Supreme Court's decision in *Trammel v. United States,* 445 U.S. 40, 100 S.Ct. 906, where the Court rejected the rule of spousal disqualification and limited the privilege with respect to spousal communications in

such a manner that "the witness-spouse alone has a privilege to refuse to testify adversely" and "may be neither compelled to testify nor foreclosed from testifying." *Id.* at 53, 100 S.Ct. at 914. We noted that, in contrast to the role of the United States Supreme Court in *Trammel,* which was "to continue the evolutionary development of testimonial privileges in federal criminal trials 'governed by the principles of the common law as they may be interpreted ... in the light of reason and experience,'" *Lucero,* 747 P.2d at 666–67 (quoting *Trammel,* 445 U.S. at 47, 100 S.Ct. at 910), our role "is to construe the language of a statute, section 13–90–107(1)(a)." *Id.* at 667. In keeping with that more restrictive role, we concluded in *Lucero* as follows:

> We find the meaning [of section 13–90–107(1)(a)] to be clear. It is also consistent with the construction that this statute received when first interpreted by this court, a construction that has not been altered in the many following years. *Dill v. People,* 19 Colo. 469, 36 P. 229 (1894); *White v. Bower,* 56 Colo. 575, 136 P. 1053 (1913). *See People v. Corbett,* 656 P.2d [687, 689 (Colo.1983)] (Quinn, J., specially concurring). We adhere to that construction today and hold that section 13–90–107(1)(a), 6 C.R.S. (1973), precludes testimony by one spouse for or against the other without the consent of the other spouse.

*Id.*

### III.

The record in this case unequivocally demonstrates that the mother properly invoked the spousal testimonial privilege when her present husband, David Brady, was called by the father as a witness in support of the father's motion for modification of custody. It is undisputed that David Brady, when called as a witness, was presently married to the mother and,

---

paragraph (a) if such communications are made for the purpose of aiding the commission of a future crime or of a present continuing crime.

(IV) The burden of proving the existence of a marriage for the purposes of this paragraph (a) shall be on the party asserting the claim.

(V) Notice of the assertion of the marital privilege shall be given as soon as practicable but not less than ten days prior to assertion at any hearing.

§ 13–90–107(1)(a), 6A C.R.S. (1988 Supp.).

hence, his proffered testimony was within the scope of the statutory privilege against adverse spousal testimony as well as the statutory privilege with regard to marital communications. Moreover, the record conclusively establishes that none of the statutory exceptions to the privilege was applicable to the husband's proffered testimony. The father's motion to modify custody was not a criminal action involving a crime committed by one spouse against another or involving a criminal action against one or both spouses prior to the date of their marriage. Nor did the father's motion to modify custody constitute a civil proceeding by one spouse against the other. Rather, the motion for modification of custody was a civil proceeding involving two divorced parents, in which the father sought to elicit testimony against the mother by examining the mother's present husband—a proceeding which, insofar as the present husband's proffered testimony is concerned, was clearly beyond the reach of any of the exceptions in section 13–90–107(1)(a).

█ Although Brady's sparse testimony suggests that he was presently separated from the mother and that a dissolution petition may have been filed, it is undisputed that there was still in existence a valid marriage between the mother and Brady. Under such circumstances, the spousal testimonial privilege continues until such time as the bonds of marriage have been broken by death or dissolution, and not, as here, by what might be nothing more than a temporary separation. *See* C. McCormick, *Evidence* § 66, at 145 (E. Cleary 2d ed. 1972); 8 J. Wigmore, *Evidence* § 2237 (J. McNaughton rev. 1961). Furthermore, even if the marriage between the mother

and Brady had been terminated by a decree of dissolution prior to the custody hearing, section 13–90–107(1)(a) would clearly have prohibited Brady from testifying without the mother's consent "afterward"—that is, subsequent to the dissolution of the marriage—as to any communications made by Brady or the mother to each other during the marriage. Under the factual record of this case, which unequivocally establishes a valid and existing marriage between the mother and Brady at the time of Brady's testimony, the plain language of section 13–90–107(1)(a) required the district court to sustain the mother's claim of privilege, and the district court so ruled.

Notwithstanding the plain terms of section 13–90–107(1)(a), the court of appeals held that the spousal testimonial privilege is inapplicable to a child custody hearing because, in its view, such a hearing requires a court to scrutinize all evidence as to parental ability in order to resolve the issue of child custody in a manner consistent with "the protection of the children and for the sake of public policy." *Bozarth*, 759 P.2d at 795.[5] We reject this analysis. The mere fact that the focus of a child custody hearing is on the best interests of the child does not place such a hearing in a class by itself for purposes of the spousal testimonial privilege.

In this case the father called Brady as a witness to testify in support of the father's motion to modify custody and against the interest of the mother, who was still married to Brady, on the issue of the mother's treatment of the child. A motion to modify custody, no less than other types of motions in civil and criminal proceedings, must be determined in accordance with con-

---

**5.** The court of appeals stated that its holding on the spousal testimonial privilege was consistent with the rationale of *Rayer v. Rayer,* 32 Colo. App. 400, 512 P.2d 637 (1973). In *Rayer,* however, the court considered whether the trial court had erred in interviewing the children during a custody hearing without making a record of the interview. In holding that no reversible error was committed by the trial court, the court of appeals remarked that "[c]ustody cases are not adversary proceedings, but hearings to determine what placement of the child will be in the child's best interests."

32 Colo.App. at 403, 512 P.2d at 639. There was no issue raised in *Rayer* about the applicability or scope of the spousal testimonial privilege and, for that reason, it provides no supportive rationale for the court of appeals' holding in the instant case. The controlling rationale for this case is the "plain statutory language" rationale of *People v. Lucero,* 747 P.2d 660 (Colo.1987). However, although *Lucero* was decided approximately three months prior to the issuance of the court of appeals' opinion in this case, *Lucero* was neither discussed nor cited in the opinion.

trolling statutory law. The spousal testimonial privilege applicable to this case extends to any civil or criminal proceeding in which a husband is examined "for or against his wife without her consent," or a wife is examined "for or against her husband without his consent," § 13–90–107(1)(a), 6A C.R.S. (1987), unless the proceeding falls within one of the express statutory exceptions. *Lucero,* 747 P.2d at 666–67. The General Assembly's failure to include child custody cases within the statutory exceptions is compelling evidence that it intended the privilege to apply to such proceedings.

■ We thus hold that the spousal testimonial privilege created by section 13–90–107(1)(a), 6A C.R.S. (1987), is applicable to a hearing on a motion to modify child custody and that the court of appeals erred in ruling to the contrary. We accordingly reverse the judgment of the court of appeals and remand the case to that court with directions to consider the other issues raised but not resolved on the appeal filed with that court.

Justice ROVIRA concurs in part and dissents in part.

Justice ROVIRA concurring in part and dissenting in part:

While I agree with the majority that communications between spouses made during the marriage are privileged, even in a child custody proceeding, I disagree that David Brady's (husband) testimony concerning his observations of his wife's activities is also precluded. Therefore, I respectfully concur in part and dissent in part.

This court has held that the spousal privilege statute must be strictly construed because of the privilege's tendency to obstruct full disclosure of the truth. *Petro–Lewis Corp. v. District Court,* 727 P.2d 41 (Colo.1986); *Keeler v. Russum,* 68 Colo. 196, 189 P. 255 (1920). I believe that the spousal privilege, at least as to a husband's observations of his wife's activities, does not apply in a child custody case because such a proceeding is not one in which the husband is testifying "for or against his wife." I have arrived at this conclusion

after examining the pertinent portions of section 13–90–107(1)(a), 6A C.R.S. (1987). The language concerning privileged communications between the spouses is quite broad, and no exception for child custody hearings may be read into the plain language of the statute. The protection for a spouse's observations, however, is modified by the requirement that the testimony be "for or against" the spouse. Because a child custody proceeding is not adversary in nature, but is a proceeding to determine and protect the child's best interests, I would hold that the spousal privilege as to observations does not apply in this case.

In *Sabon v. People,* 142 Colo. 323, 350 P.2d 576 (1960), this court held that the spousal privilege statute did not apply to an adjudication of mental illness because the proceeding was not adversarial in nature, and thus the wife's testimony was neither for nor against her husband. We emphasized that the mental illness inquiry was a special statutory proceeding by the state for the protection and benefit of an incompetent individual. The state's interest in protecting, supervising, and caring for the incompetent in a mental health proceeding is comparable to the state's interest, as *parens patriae,* in protecting the welfare of a child in a custody proceeding.

The state, as *parens patriae,* has a continuing responsibility to provide for the protection of children within its borders, in order to safeguard and promote the welfare of the child. *E.P. v. District Court,* 696 P.2d 254 (Colo.1985); *McMillin v. McMillin,* 114 Colo. 247, 158 P.2d 444 (1945). "[T]he initiation of any proceedings in a court in which the rights, status and welfare of an infant may be affected immediately establishes the infant's relation to the court as that of its ward." *Smith v. Welfare Dep't,* 144 Colo. 103, 355 P.2d 317 (1960). When a custody proceeding is initiated, the state's *parens patriae* role is implicated, just as the state's protection is invoked in a mental illness adjudication. The only criteria to be utilized in a custody proceeding are those of the welfare and best interests of the child. §§ 14–10–131, 14–10–124, 6B C.R.S. (1987); *In re Mar-*

*riage of Short,* 698 P.2d 1310 (Colo.1985). A child is not a piece of property to be won or lost based on the merits of a particular parent's claim. Thus, a child custody hearing is not an adversarial proceeding pitting the father against the mother, but rather, it is a hearing to determine what placement of the child will be in the child's best interests. *Rayer v. Rayer,* 32 Colo.App. 400, 512 P.2d 637 (1973).

> In a custody proceeding the court does not proceed upon the theory that the petitioner, whether father or mother, has a cause of action against the other, or indeed against anyone. [The court] acts as *parens patriae* to do what is best for the interest of the child. [It] is not adjudicating a controversy between adversary parties, to compose their private differences. [It] is not determining rights as between a parent and child, or as between one parent and another.

*Leigh v. Aiken,* 54 Ala.App. 620, 311 So.2d 444 (1975) (quoting *Cleckley v. Cleckley,* 250 Ala. 78, 33 So.2d 338 (1948)). In a custody proceeding, a court does not determine that a particular parent has a right to custody of his child, but whether the child's best interests will be served by placing the child in the custody of a particular parent. Thus, any testimony concerning the child, including his living conditions and possible child abuse, is not testimony "for or against" the spouse. Rather, the testimony is necessary in order to aid the state in its role of protecting the best interests of the child.

Other jurisdictions have held that a custody proceeding is non-adversarial in nature. *See Leigh v. Aiken,* 54 Ala.App. 620, 311 So.2d 444 (1975); *Oakes v. Oakes,* 45 Ill.App.2d 387, 195 N.E.2d 840 (1964); *see also Rayer v. Rayer,* 32 Colo.App. 400, 512 P.2d 637 (1973). Further, several jurisdictions have held that child neglect proceedings, which also involve a custody determination, are non-adversarial in nature. *See, e.g., In Interest of Brooks,* 63 Ill.App.3d 328, 379 N.E.2d 872 (1978).

In determining whether the spousal privilege applies in a custody proceeding, it is instructive to look at other proceedings in which the state exercises its role as *parens patriae.* There are at least three types of proceedings, for the benefit of a child, in which the spousal privilege does not apply. *See* § 14–5–123, 6B C.R.S. (1987) (privilege inapplicable in proceeding to enforce support obligation); § 19–10–112, 8B C.R.S. (1986) (privilege inapplicable in child abuse proceeding); § 19–3–311, 8B C.R.S. (1988) (privilege inapplicable in dependency and neglect proceeding). These exceptions indicate an overall legislative scheme to treat proceedings in which the state exercises its protective role over a child differently from other proceedings. In such instances, the spousal privilege does not apply so as to impede the court's truth seeking functions. In order to be consistent, I believe that child custody proceedings should be treated in the same manner.

Accordingly, I concur in part and dissent in part.