This appeal is from a final decree of the Circuit Court of Coffee County, Alabama modifying a prior divorce decree by changing custody of two minor children from the mother to the father. *Page 167 
Georgie Thorne, the mother, and Dennis Thorne, the father, were divorced on the ground of incompatibility in July 1974 and the mother was awarded custody of the two minor children born of the marriage. The father was given reasonable visitation rights. In March 1975, on motion of the father, the Circuit Court of Coffee County entered an order modifying the divorce decree by precisely defining the times at which the father could have the children visit with him. In October 1975 the divorce decree was again modified on petition of the father by changing the specified periods of visitation.
The action now before the court was initiated on July 1, 1976 when the father once again filed a petition alleging that there had been conflicts and disputes between the parties during the father's exercise of his visitation rights "which materially affect the welfare of the minor children in this cause and which are materially detrimental to the Defendant exercising his visitation rights." The father specifically requested the court to "enter such orders and decrees as are necessary to insure the Defendant his rights of visitation with the minor children without conflicts and disagreements," and generally asked for "such other, further, and different relief as the Court may deem proper under the circumstances."
A hearing on the petition was held. Both parties, represented by counsel, appeared and testified. Testimony by the father and his present wife dealt solely with events which transpired between the parties when the father would arrive to pick up the children in order to exercise his visitation rights.
At the conclusion of the present Mrs. Thorne's testimony the following transpired:
"QUESTIONS ASKED BY THE COURT:
. . . . .
 "Q. Do you feel that you and your present husband could look after these children if they were placed in your permanent care and custody here in Enterprise?
"A. I sure do, because I don't have any children.
 "Q. Do you think that would end this conflict and be in the best interest of these children to be removed from the custody of Mrs. Thorne.
"A. I really don't know.
"THE COURT: That's all."
The mother then presented her evidence through her own testimony and that of her parents, with whom she and the children live. This testimony covered not only the conflicts and misunderstandings which occurred over the father's exercise of his visitation rights but also touched upon the children's well-being and care while in her custody. The children were depicted as being loved and well cared for in every respect by both their mother and their grandparents.
At the conclusion of the hearing the circuit court entered a decree removing custody of the children from the mother to the father; allowing the mother the same visitation rights as granted the father in the October 1975 decree; and requiring the mother to post a $2,000 bond prior to the exercise of her visitation periods. The mother appeals.
Two questions are presented for decision. The first is whether the trial court's modification of the prior divorce decree by changing custody of the children at the conclusion of a hearing to determine modification of the father's visitation rights denied due process to the mother in that she was not given notice that the issue of custody was to be decided. The second is whether the trial court abused its discretion by changing custody from the mother to the father where there was no showing of changed circumstances to justify the change. We hold the trial court erred in both respects and reverse.
It is apparent from the petition filed by the father and his testimony that the father's sole reason for going before the Coffee County Circuit Court was to obtain a further clarification of his visitation rights under the divorce decree, specifically that he be allowed to pick up the children at *Page 168 
some place other than the mother's home, in the hope that the arguments and fights which had occurred in the past would thereby cease. He did not ask for custody, did not question the mother's fitness for custody, or adduce any evidence that the children would be better off in his custody. The first indication to either party that custody of the children might be an issue was when, at the close of the father's evidence, the trial judge asked the father's present wife whether she thought it would be in the best interest of the children to be removed from the mother's custody. The mother contends this was not adequate notice to her of the custody issue and therefore she was denied due process of law. We agree.
The question is not whether a trial judge, sitting in equity to determine rights as between parents which affect the welfare of their minor children, can grant relief for which neither party asked, but rather whether the judge can grant different relief without giving the parents adequate notice and an opportunity to be heard.
An equity court has wide judicial discretion in proceedings involving the welfare of children. In Hayes v. Hayes, 192 Ala. 280,68 So. 351 (1915), it was said that when an equity court has acquired jurisdiction of a child as to the child's custody and control, the child becomes a ward of the court and the parties to the suit are of secondary importance. The court may make any order or decree regarding the welfare of the child as its sound discretion dictates. Hayes was followed in Ex parteBates, 247 Ala. 391, 24 So.2d 421 (1945).
In Ex parte White, 245 Ala. 212, 16 So.2d 500 (1944), the supreme court quoted Judge Cardozo's discussion of an equity court's jurisdiction and power in child custody proceedings brought independent of a divorce action in Finlay v. Finlay,240 N.Y. 429, 148 N.E. 624 (1925):
 "`. . . It is not a remedy by suit. It is a remedy by petition. . . . The chancellor in exercising his jurisdiction upon petition does not proceed upon the theory that the petitioner, whether father or mother, has a cause of action against the other or indeed against anyone. He acts as parens patriae to do what is best for the interest of the child. . . . He is not adjudicating a controversy between adversary parties, to compose their private differences. He is not determining rights "as between a parent and a child," or as between one parent and another. . . . Equity does not concern itself with such disputes in their relation to the disputants. Its concern is for the child.'" 245 Ala. at 214, 16 So.2d at 502.
In Stephens v. Stephens, 253 Ala. 315, 45 So.2d 153 (1950), a mother had petitioned the court for custody of her children during the pendency of her appeal from a decree divorcing her from the children's father. The supreme court indicated that the petition for custody and the appeal from the divorce decree were independent actions, neither one affecting the other. It then said:
 ". . . The question of the custody of infant children is not an adversary proceeding between parents in the eyes of the law, but is a matter within the peculiar discretion of the chancellor as to the welfare of wards of the court. He acts as parens patriae and any matter affecting their rights or interests are within his peculiar jurisdiction, and it is immaterial whether that jurisdiction is invoked by an independent suit or by petition in the same cause. Any pleading which shows upon its face that the welfare of an infant requires an order with respect to its custody or support is sufficient to that end." 253 Ala. at 319-20, 45 So.2d at 157.
Ex parte White, supra, and the Stephens case were both cited with approval by this court in Leigh v. Aiken, 54 Ala. App. 620,311 So.2d 444 (1975). However, while recognizing the broad judicial discretion of an equity court in its role as protector of the welfare of minor children within its jurisdiction, this court also stated the equity court's discretion is not unlimited or arbitrary, but rather subject to the limitation that the court may not act contrary to the best interest of the child. *Page 169 
There is another limitation placed on an equity court in exercising its discretion in child custody disputes between parents, and that is the right of the parents to due process of law in the proceedings. Danford v. Dupree, 272 Ala. 517,132 So.2d 734 (1961). There the trial court prejudged a mother's petition to regain custody of her child before the mother had been given an opportunity to present evidence in support of her petition, thereby denying the mother her opportunity to be heard. The supreme court said:
 "In dealing with such a delicate and difficult question — the welfare of a minor child — due process of law in legal proceedings should be observed. These settled courses of procedure, as established by our law, include due notice, a hearing or opportunity to be heard before a court of competent jurisdiction. Tillman v. Walters, 214 Ala. 71, 108 So. 62." 272 Ala. at 520, 132 So.2d at 735.
Dictum in an earlier case also states that a parent's right to the custody of his or her minor child cannot be finally terminated unless the parent has been given due notice and an opportunity to be heard. Ex parte White, supra. There the supreme court upheld a temporary award of custody to the father which had been granted without notice to the mother, but added the provisional change in custody by a summary proceeding is permissible only if an adequate remedy is available by which the parent may afterward have his or her rights presented to a court of competent jurisdiction.
The citation to Tillman v. Walters, 214 Ala. 71, 108 So. 62
(1925) in Danford v. Dupree, supra, indicates that the court there considered the Constitution of the United States, rather than the Alabama Constitution of 1901, as the due process source. However, neither the Danford decision nor Ex parteWhite, supra, discuss the nature of the right to due process. Our research reveals well-founded reasons for the result reached in these decisions.
The Supreme Court of the United States in Hannah v. Larche,363 U.S. 420, 80 S.Ct. 1502, 4 L.Ed.2d 1307 (1960), discussing the concept of due process, observed:
 "`Due process' is an elusive concept. Its exact boundaries are undefinable, and its content varies according to specific factual contexts. . . . Therefore, as a generalization, it can be said that due process embodies the differing rules of fair play, which through the years, have become associated with differing types of proceedings. Whether the Constitution requires that a particular right obtain in a specific proceeding depends upon a complexity of factors. The nature of the alleged right involved, the nature of the proceeding, and the possible burden on that proceeding, are all considerations which must be taken into account." 363 U.S. at 442, 80 S.Ct. at 1515.
Thus, in deciding whether a parent has a right to due process when a party to a proceeding to determine custody of his or her minor child, the court will consider three factors: the nature of the right involved, the nature of the proceeding, and the possible burden on the proceeding.
With regard to the nature of the right involved, both Danford
and White simply assume an inherent right on the part of a parent to custody of his or her child. Decisions of the United States Supreme Court indicate that the right is protected by the Constitution of the United States.
The United States Supreme Court in May v. Anderson,345 U.S. 528, 73 S.Ct. 840, 97 L.Ed. 1221 (1953), recognized that a mother's right to custody of her children is far more precious than her property rights in alimony by holding that full faith and credit need not be given to that portion of an ex parte divorce decree terminating her right to custody of children born of the marriage.
In Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208,31 L.Ed.2d 551 (1972), the Court held that under the due process clause of the fourteenth amendment the father of illegitimate children was entitled to a hearing on his fitness as a parent before the state could take his children away from him. With regard to the nature of the right involved, the Court said: *Page 170 
 "The private interest here, that of a man in the children he has sired and raised, undeniably warrants deference and, absent a powerful countervailing interest, protection. It is plain that the interest of a parent in the companionship, care, custody, and management of his or her children `come[s] to this Court with a momentum for respect lacking when appeal is made to liberties which derive merely from shifting economic arrangements.'
 "The Court has frequently emphasized the importance of the family. The rights to conceive and to raise one's children have been deemed `essential,' `basic civil rights of man,' and `[r]ights far more precious . . . than property rights.' `It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder.' The integrity of the family unit has found protection in the Due Process Clause of the Fourteenth Amendment, the Equal Protection Clause of the Fourteenth Amendment, and the Ninth Amendment." 405 U.S. at 651, 92 S.Ct. at 1212 (citations omitted).
It would appear from the above cited cases that a natural parent's right to custody of his or her child is a right protected by the Federal Constitution.
With regard to the nature of the proceeding, the question is whether affording due process to the parent of a child in a custody proceeding interferes with the court's responsibility to protect the welfare and best interest of the child. This requires a balancing of the right of the parent, discussed above, against the interest of the State of Alabama, since the child becomes a ward of the court, which is in turn an arm of the state. It should be kept in mind that at issue is the due process requirement of notice to the parent that his or her right to custody of the child is to be considered by the court.
An equity court has a heavy burden in proceedings involving minor children. In Wise v. Watson, 286 Ala. 22, 236 So.2d 681
(1970), our supreme court said at 286 Ala. 25, 236 So.2d 684, "[I]t is the [equity] court's duty to guard and protect the interest of its infant wards with scrupulous care," (emphasis added).
In Leigh v. Aiken, supra, this court in even stronger language said:
 "The public policy that the state has a compelling interest in determining the best interest and welfare of a child brought within the protective jurisdiction of its courts sitting in equity is beyond dispute. Such protection extends to the procedural process of exercising its jurisdiction as well as future custody disposition." 54 Ala. App. at 626, 311 So.2d at 450.
Although the state has a compelling interest in determining the best interest and welfare of a child, the interest is not compelling enough to allow the determination to be made without notice to the child's parents. The purpose of requiring notice is to preserve the fairness of the hearing; and it is of vital importance to the child, as well as the parent, that the hearing be fair. A parent must have notice of the issues the court will decide in order to adduce evidence on those issues before the court, to give the court a basis from which a determination most beneficial to the child can be made. Otherwise, the child, rather than being helped, might even be harmed.
In the case before us, the mother through her own testimony and that of her parents attempted to show that the children were well-off in her custody. However, had she known prior to the hearing that the court would consider her fitness for custody she could have — if she so desired — presented other witnesses and evidence to support her contention that she should retain custody of her children.
Finally, we consider the burden requiring notice would place on the proceeding. We think such burden, if any, would be minimal. Only in rare circumstances would granting a continuance result in detriment to the child. In the few situations where it appears the actual health and physical well-being *Page 171 
of the child are in danger, the court has authority under Exparte White, supra, to make a temporary grant of custody until a final determination can be made. Thus, we conclude the parental right to due process far outweighs any burden that would be placed on the proceeding to determine that right.
The appellee-father relies on the rule that mere legal niceties are not required in the pleadings in child custody proceedings and the court is not bound by any strict rule of pleading. Broadus v. Broadus, 283 Ala. 406, 217 So.2d 811
(1969); Barnett v. Barnett, 270 Ala. 489, 120 So.2d 128 (1960). We do not find this principle applicable to the case at bar. Nor do the cases cited by the father support such a proposition. In Broadus the mother contested the award of partial custody and visitation rights to the child's paternal grandparents on the ground that the grandparents had not been made parties by the pleadings. The court, in upholding the award, specifically found that the paternal grandparents had been brought into the case on their petition to show cause, signed by them as third party complainants, and that the issue as to their participation had been fully litigated. In Barnett
the father, who had originally been awarded custody of the child in question, complained that the mother's petition seeking a change in custody did not show on its face a change of conditions sufficient to warrant an alteration of the original custody decree and that the trial court erred in overruling his demurrer to the pleading. The supreme court upheld the trial court, stating:
 "Although the petition may not be as factual in its averments as might be desired or required under ordinary rules of pleading, we think it is sufficient to invoke the jurisdiction of the equity court, for it shows a change of a condition which apparently played a large part in the court's decision to award the custody of the child to the father rather than to the mother." 270 Ala. at 490-91, 120 So.2d at 130.
Thus in both Broadus and Barnett the pleadings were sufficient to give notice to the opposing party of the issues to be litigated. That is not the case before us.
The father would also have us apply Rule 15 (b), ARCP, and thereby deem the pleadings amended so as to include the issue of custody of the children. He says that the mother introduced evidence concerning the welfare of the children in her custody and that her attorney did not object to the trial court's interjection of the custody issue by its question to the present Mrs. Thorne, set out above. We find Rule 15 (b) to be of no aid to the father. Although decisions of our supreme court hold that amendment under Rule 15 (b) is to be liberally allowed, there is a caveat attached: amendment is not to be allowed if the opposing party will be unduly prejudiced by the amendment. Stead v. Blue Cross-Blue Shield of Alabama, 294 Ala. 3, 310 So.2d 469 (1975); Miller v. Holder, 292 Ala. 554,297 So.2d 802 (1974). To say that denial of due process by failure to give notice of an issue to be decided is prejudice to the uninformed and opposing party is understatement. Rule 15 (b) cannot be applied in such a situation.
We hold that the trial court erred to reversal by changing custody of the children from the mother to the father without giving the mother notice that custody was to be decided.
We further hold that the trial court abused its discretion by changing custody in the absence of a showing of changed circumstances.
It is clear that a decree fixing custody of a minor child is conclusive of the interests of the child and the rights of the parents as long as the status of the parties at the time of the decree remains without material change. Anonymous v. Anonymous,277 Ala. 634, 173 So.2d 797 (1965); Messick v. Messick,261 Ala. 142, 73 So.2d 547 (1954). Modification of a child custody decree must be based upon allegation and proof showing a material change of circumstances has occurred affecting the best interests of the child since the last decree, Turner v.Bynum, 56 Ala. App. 489, *Page 172 323 So.2d 377 (1975), and the burden of proving a material change in circumstances is on the proponent of such change. Lawson v.Jennings, 52 Ala. App. 582, 296 So.2d 176 (1974). (We note in passing there was no allegation of changed circumstances before the trial court, since the father did not so allege in his petition and did not request that custody be taken from the mother and placed in him.)
We would also point out that courts seldom deprive a mother of the custody of small children unless misconduct is imputed to her or she is found to be unfit. Cox v. Cox, 48 Ala. App. 574, 266 So.2d 784 (1972); Rowe v. Rowe, 45 Ala. App. 367,231 So.2d 144 (1970). In the case at bar there was no evidence of the mother's misconduct or unfitness. The mother, however, did produce evidence that the children were well cared for, that they were happy, well adjusted children and that they displayed no undue emotional distress except during some of the father's visits.
The only evidence that could be considered to support an inference of changed circumstances such as would authorize a change of custody arose from the conduct of the parents at the times the father sought to exercise his visitation rights awarded by court decree. The trial court determined that the conduct of the parties at the time the children were exchanged adversely affected the health of the children.
The evidence shows that the disharmony which no doubt was the ground of the parties' divorce usually surfaced at visitation time. The most egregious dispute which occurred ended in a tugging match between the parents in the front yard of the mother's and children's residence, with the children's suitcase torn and their clothes scattered about the yard. Neither party denied these facts and both agreed that the scene upset the children. Both parties agree that the next time the father appeared to get the children their son did not want to leave with his father and was so nervous and upset that he became physically ill.
Notwithstanding the fault of both parties in precipitating disputes at visitation time, we are convinced that the evidence is completely insufficient to warrant a finding of a material change in circumstances since the last decree to authorize a change in custody of these two small children from the mother, with whom they have lived all their lives, to the father. The trial court thereby abused its discretion in changing custody of the children from the mother to the father.
Although we have said the trial court erred in changing custody of the children to the father, we consider that we would be remiss in not pointing out to both parents that they have said that they love their children, yet they have not placed the best interests of their children ahead of their obvious dislike for each other. The father has on more than one occasion opened the children's suitcase, criticized the mother in the presence of the children for failure to pack clothes he thinks suitable for them to wear while visiting him, and demanded different clothing. Predictably, this conduct has provoked unnecessary hostility and conflict. The mother, for her part, as contributed to the disharmony between the two by abiding by the letter of the custody decree concerning the father's visitation periods in such an inflexible manner that the father has found it necessary to have the terms of visitation altered by several decrees.
We think these problems can be easily solved if the father will obtain clothing he finds suitable for the children and keep that clothing at his house for their use while visiting him. The mother should make every effort to comply with the father's request for a different visitation time or date when she has received prior notice of the requested change. It is our sincere hope that these two parents will put aside, if not eliminate, their animosity toward each other so that their children can grow up knowing and sharing in the love and companionship of both their parents.
REVERSED AND REMANDED.
WRIGHT, P.J., and HOLMES, J., concur. *Page 173