We granted certiorari to review petitioner's claims of error in the Court of Civil Appeals' decision, 353 So.2d 510, in approving an in camera conference between the trial judge and the maternal and paternal grandparents, and in approving an award of custody by the trial judge to the paternal grandparents, who were nonparties.
The Court of Civil Appeals' opinion, 353 So.2d 510, with respect to the in camera conferences held:
 "The court states in its judgment that it had post-trial conferences with the parents of both parties. There is no other reference to such occurrence in the record. The wife in brief states it was done without consent of the attorneys. The husband in brief states that it was done with consent of wife's counsel. There being no record of impropriety, this court will assume the trial court acted properly." [Our emphasis.]
With respect to the award of custody to the nonparty paternal grandparents, the Court of Civil Appeals, 353 So.2d 510, held:
 "This court does not endorse nor necessarily approve the involvement of persons in the judgment who were not parties. However, we can see no injury when the party complaining has been determined from the evidence to be personally unfit to have custody and there is evidence of fitness of the grantee of custody before the court."
Petitioner's arguments are twofold. First, petitioner contends that the in camera conference between the judge and the maternal and paternal grandparents was reversible error because she had no notice of the conferences, and, therefore, no opportunity to object. Second, petitioner contends that the award of custody of the minor child to nonparties was violative of her due process rights in that she had no notice the nonparties were being considered for custody and no opportunity to be heard on that issue.
Respondent, on the other hand, contends that petitioner consented to the in-chambers interview by the judge with the nonparties. In support of this, respondent has attached affidavits of both the judge and respondent's attorney. Respondent further contends that petitioner was fully aware of the possibility that the judge might award custody of the child to the paternal grandparents, since both sets of grandparents testified that they would be willing to take custody of the child. Therefore, respondent argues, petitioner did have notice and an opportunity to be heard and her due process rights were not violated.
At the close of the case, the judge made the following statement: "Two or three things that I want to do before I make a decision in the case. The first thing that I want to do right now, as soon as we walk *Page 517 
out of the Court Room, is to have the two parties alone in chambers with me if there's no objection on the part of counsel." (Our emphasis.) Respondent's affidavits state that the judge requested an interview with the maternal and paternal grandparents. Petitioner's affidavits deny this, and point to the above-quoted portion of the record to support their argument.
Alabama has long recognized that judges may conduct in-chambers interviews with minor children, who are the subject of divorce custody proceedings, [Bynum v. Bynum, 52 Ala. App. 633, 296 So.2d 722 (1974); Hagler v. Hagler, 50 Ala. App. 266,278 So.2d 715 (1973)], provided that the judge has first notified the parties of his intention to do so, and the parties have either expressly consented to the interview or failed to object after notice thereof. Bynum v. Bynum, 52 Ala. App. 633,296 So.2d 722 (1974).
In the case at bar, there are a number of distinguishing factors. First, and perhaps most important, the record fails to disclose any reference to the judge's intention to have a conference with the grandparents in chambers. Thus, of course, the record is silent as to any objection on the part of the petitioner to such proceedings. Furthermore, an interview with minor children is not at issue; here, the trial court conferred with the child's grandparents.
Our decisions, in explaining the rationale behind "in-chambers" colloquies with minor children have said this: "[T]he private examination of children in such cases, no doubt, [is] more helpful in obtaining full and frank disclosures from them than if examined as ordinary witnesses." Ruck v. Ruck,265 Ala. 29, 32, 89 So.2d 274, 276 (1956). [Emphasis added.]
Certainly, a child's grandparents may have an important contribution to make to the court's determination as to the child's best interest. However, this contribution must be made in open court unless the parties agree otherwise.
Respondent contends that petitioner was fully cognizant of the judge's intention to interview the grandparents, and he has included two affidavits supporting his position. Petitioner has also offered affidavits supporting her contention.
It has long been the rule in Alabama that this Court is bound by the record. Birmingham Southern R. Co. v. McDonald,339 So.2d 1004 (Ala. 1976); Moody v. State ex rel. Payne, 295 Ala. 299, 329 So.2d 73 (1976). Ex parte affidavits of the kind in question, not being a part of the record, cannot be considered by the Court. Scroggins v. Alabama Gas Corp., 275 Ala. 650,158 So.2d 90 (1963).
 "To allow parties to file for the first time in the Supreme Court ex parte affidavits giving evidential support to an alleged error that does not appear in the record proper would leave this court open to a deluge of new issues being raised for the first time on appeal." Id. at 654, 158 So.2d at 94.
Respondent then contends that Rule 47, ARAP, authorizes the use of these affidavits. That rule states:
 "No private agreement or consent between the parties or their attorneys, relating to the proceedings in any cause, shall be alleged or suggested by either against the other, unless the same be in writing, and signed by the party to be bound thereby; provided, however, agreements made in open court or at pretrial conferences are binding, whether such agreements are oral or written." [Our emphasis.]
We may say here that this rule is a rewriting of former Supreme Court Rule 20, which stated the requirement that private agreements between parties or their attorneys must be in writing and signed by the party to be bound thereby. Although the old rule contained no specific provision authorizing the use of agreements made in open court or at pre-trial conferences, Alabama has long recognized and approved of their use. See e.g., Crawford v. Tucker, 258 Ala. 658, 64 So.2d 411
(1953); Samuels v. Scott, 212 Ala. 679, 103 So. 848 (1925);Prestwood v. Watson, 111 Ala. 604, 20 So. 600 (1895). *Page 518 
This rule has no application here, however. As has been stated, former Supreme Court Rule 20, which made no mention of allowing oral agreements made in open court, was construed in such manner that their validity was sometimes recognized nonetheless. It was reasoned that courts necessarily act upon such agreements daily and that the refusal to recognize their validity would delay the transaction of court business and would cause unneeded time and expense for the parties and their attorneys. See e.g., Prestwood v. Watson, 111 Ala. 604,20 So. 600 (1895). See generally "Stipulations — Form Requirements,"
7 A.L.R.3d 1394.
While Rule 47, ARAP, explicitly adopted this practice, it is still necessary that the oral agreement be made in open court. There is nothing of record to show this alleged agreement was so made.
New York's statute regarding stipulations is virtually identical to Alabama's. It explicitly provides for agreements made in open court. The term "open court" has been explained thusly by the New York courts:
 "Judicial proceedings in `open court', wherever held, including chambers of course, and informal conferences in chambers or robing rooms or even a courtroom are manifestly disparate. Even before full reporting in open court became universal in courts of record, the formality, publicity, and solemnity of an open court proceeding marked it as different from the preliminary atmosphere attached to informal conferences elsewhere. Moreover, the proceedings in open court would always have some formal entries, if only in the clerk's minutes, to memorialize the critical litigation events. In the latter days, it has also meant an available full transcript beyond dispute and the fallibility of memory."
In re Dolgin Eldert Corporation, 31 N.Y.2d 1, 334 N.Y.S.2d 833, at 840, 286 N.E.2d 228 at 233.
We think this is a correct interpretation of the term. We also think that this definition negatives respondent's contention that the alleged oral agreement is within the ambit of this rule. For here, there is no record of the alleged agreement in the court reporter's transcript,[1] nor on the docket sheet nor in the minute entry, and the appended affidavits evidence a dispute, not an agreement. Where, as here, there is a dispute and the agreement is not shown of record to have been made in open court, the rule has no applicability.
We turn now to petitioner's contention that the award of custody of the minor child to the nonparty paternal grandparents, without notice to petitioner and an opportunity to be heard, was a denial of due process.
Although this clearly appears to be a question of first impression in Alabama, we are not bereft of any guidelines. In the very recent case of Thorne v. Thorne, 344 So.2d 165
(Ala.Civ.App. 1977), a husband had filed a petition against his former wife seeking modification of his visitation rights with his children. The former wife had been granted custody in the divorce decree. At the close of the hearing, the court asked the husband's second wife if she felt that she and the husband could look after the children if they were placed in their permanent care and custody. She responded in the affirmative. The judge then asked if she felt this would be in the children's best interest, and she responded that she did not know. In its final judgment, the court changed the custody from the wife to the husband and gave the wife the same visitation period which had formerly been given the husband. The court made this change although change of custody was not an issue in the case.
The Alabama Court of Civil Appeals held, and we think properly so, that the mother had been denied due process of law, guaranteed by the Fourteenth Amendment to the *Page 519 
United States Constitution, when the trial court changed custody of the child from the mother to the father without notice to her and an opportunity to litigate the issue. In so holding, the court (speaking through Judge Bradley) concluded that the "parental right to due process far outweighs any burden that would be placed on the proceeding to determine that right." Id. at 171. We think the Thorne opinion is well written, well reasoned and eminently correct. We follow it in this case.
The petitioner here likewise has been denied due process of law guaranteed by both the state and federal Constitutions. The issue of custody was the issue before the court, but the custody dispute centered around and was focused upon, the parties. During the trial, both the paternal and the maternal grandparents were asked hypothetically if they would be willing to take custody of the child and all replied they would. However, they were not parties to the case, and it cannot be said that the petitioner had notice and an opportunity to be heard, the hallmarks of due process, regarding this issue. However, respondent argues that the questions directed to the grandparents put petitioner on notice that award of custody to one of the sets of grandparents was an issue. A similar contention was made and rejected in Thorne, supra, viz:
 ". . . The first indication to either party that custody of the children might be an issue was when, at the close of the father's evidence, the trial judge asked the father's present wife whether she thought it would be in the best interest of the children to be removed from the mother's custody. The mother contends this was not adequate notice to her of the custody issue and therefore she was denied due process of law. We agree.
 "The question is not whether a trial judge, sitting in equity to determine rights as between parents which affect the welfare of their minor children, can grant relief for which neither party asked, but rather whether the judge can grant different relief without giving the parents adequate notice and an opportunity to be heard." Id. at 168.
The court went on to recognize the equity court's wide discretion in proceedings involving the welfare of children, viz:
 ". . . the equity court's discretion is not unlimited or arbitrary, but rather subject to the limitation that the court may not act contrary to the best interest of the child.
 "There is another limitation placed on an equity court in exercising its discretion in child custody disputes between parents, and that is the right of the parents to due process of law in the proceedings. . . ." Id. at 168-69.
It is thus we reverse the Court of Civil Appeals' decision, with directions to remand this cause to the trial court for a hearing solely on the question of custody with due notice and an opportunity to be heard to be accorded all parties, original and those who may be joined after remand.
We are certain that any in camera conference between parties and the court on remand will only take place with approval of the parties or without objection from them in accordance with this opinion.
REVERSED AND REMANDED WITH DIRECTIONS.
All the Justices concur.
[1] Nothing we say should be taken to mean that the record can never be corrected on appeal. See Rule 10 (f), ARAP. Cf.Cockrell v. Ferrier, 375 F.2d 889 (5th Cir. 1967); 9 Moore's Federal Practice ¶ 210.08 (1), pp. 1646-49.