605 So.2d 1175 (1992)
Ex parte W.Y. (Re STATE of Alabama ex rel. S.N. v. W.Y.)
1901895.
Supreme Court of Alabama.
January 3, 1992.
Rehearing Denied April 24, 1992.
J. Earl Smith, Dothan, for appellant.
William Prendergast, Lois Brasfield and Mary E. Pons, Asst. Attys. Gen., for appellee.
PER CURIAM.
W.Y. petitions this Court for a writ of mandamus directing the Court of Civil Appeals to rescind its writ of mandamus directing the trial court, inter alia, to introduce samples of W.Y.'s blood into evidence in an action seeking to establish paternity of a minor child. We grant the petition.
On June 26, 1989, the Alabama Department of Human Resources, through Houston County Assistant District Attorney David Emery, filed an action entitled State *1176 of Alabama, ex rel. V.B.N., a child, and S.N. v. W.Y., in the District Court of Houston County. The complaint sought to establish that W.Y. was the father of V.B.N. At the same time and under the same style, he filed a notice of appearance, in which he stated that he "represented the Department of Human Resources" ("DHR").
On July 31, 1989, in response to a motion by the State of Alabama, the district court ordered each of the parties to submit to a blood test. W.Y. resisted the order through a motion to set aside the order and a subsequent motion for extension of time. On October 27, 1989, at a proceeding attended by S.N., W.Y., David Emery, and counsel for W.Y., depositions of S.N. and W.Y. were taken. During the deposition of W.Y., his reluctance to submit to a blood test was discussed. In the process of that discussion, W.Y. and David Emery agreed that the results of any such test would not be used in court.
W.Y. subsequently submitted a sample of his blood, the analysis of which was presented in a report filed with the court on December 28, 1989. On January 11, 1990, under the same style as the complaint and the notice of appearance, David Emery filed a notice of withdrawal as the attorney of record in the case. The notice stated that Jack Blumenfeld would proceed as "attorney for the Department of Human Resources."
On April 26, 1990, following the trial of the case before a referee, the court, based on testimony and the deposition of S.N., determined that W.Y. was not the father of V.B.N. On May 4, 1990, S.N., through attorney Jack Blumenfeld, filed a notice of appeal of the referee's decision to the Houston County Juvenile Court judge. On June 11, 1990, after "hearing testimony and reviewing depositions admitted into evidence," the juvenile court judge also determined that W.Y. was not the father of V.B.N. On June 19, 1990, S.N., through attorney Jack Blumenfeld, filed a notice of appeal to the Houston County Circuit Court for a trial de novo.
On August 14, 1990, W.Y., contending that he had reached an agreement with David Emery that the results of his blood test would not be used in court, moved to suppress evidence of the analysis. On the following day, the trial court, noting that the "State ha[d] stated it [would] not use the test in the event of trial," granted the motion. On August 16, S.N. filed a motion for reconsideration in which she challenged the existence of an agreement to exclude the blood test analysis.
Joel M. Nomberg, on September 5, 1990, filed a notice of appearance as "attorney for the plaintiff, State of Alabama, ex rel. S.N." On September 12, 1990, Mr. Nomberg moved to add V.B.N. as a party to the action and requested the appointment of a guardian ad litem. The motion was denied.
On December 26, 1990, Assistant Attorneys General Larry Odom and James Smith, representing the "State of Alabama, ex rel. Houston County Department of Human Resources, on behalf of V.B.N.," notified the court of their appearance on behalf of the plaintiffs. On that date, Odom and Smith also moved the court to order W.Y. to submit to a blood test to determine paternity. That motion, which was conditionally granted, was challenged by W.Y. on the ground that Alabama law does not require a defendant "to submit to a second blood test whenever the first blood test is not adverse to the party petitioning for an additional blood test."
On February 1, 1991, V.B.N., "by and through her attorney, Larry C. Odom," moved to intervene in the pending action. In response to the motion, the Honorable Michael Crespi, Houston County Circuit Judge, ordered the parties to brief these issues:
"(1) Did David Emery, as attorney for the Department of Human Resources, represent the interests of V.B.N.? (2) Is V.B.N. already either a plaintiff or relator in this case as a result of [her] district court involvement in it? (3) If David Emery was V.B.N.'s legal representative when he took W.Y.'s deposition, may the defendant be properly required to submit to a second blood test?"
*1177 After receiving the requested briefs, Judge Crespi remanded the case to the district court for a finding on the issue of whether V.B.N. had been represented there. The district court declined to submit findings on the ground that they could not be considered in a de novo trial in the circuit court. Consequently, on April 25, 1991, Judge Crespi issued the following order:
"In the absence of findings by the district court, I have determined that V.B.N. had counsel in the person of David Emery, the representative of the agency charged with pursuing this action. I find that S.N. perfected an appeal and that none was perfected for V.B.N. I therefore find that V.B.N. is precluded from intervention in this appeal and that she accordingly lacks standing to demand that the defendant submit to a further blood test. S.N. is precluded from doing so as well."
V.B.N. subsequently petitioned the Court of Civil Appeals for a writ of mandamus directing Judge Crespi to (1) withdraw his order of April 25, 1991; (2) allow her to intervene in the action in circuit court; (3) appoint Larry Odom as her guardian ad litem; and (4) order blood tests to be taken.
In the Court of Civil Appeals, V.B.N. argued that she had never been represented in the actions in the district court. Consequently, she insisted, she could not be barred from the action in circuit court because of failure to file an appeal and could not be bound by the alleged agreement precluding use of the blood test. As evidence of her alleged nonrepresentation, V.B.N. pointed to the fact that no guardian ad litem had been appointed to represent her. Additionally, she insisted that the absence of a specific reference to her as a party in the text of David Emery's notices of appearance and withdrawal proves that he did not represent her.
On September 13, 1991, the Court of Civil Appeals granted V.B.N.'s petition and issued a writ of mandamus directing Judge Crespi to (1) withdraw his order of April 25, 1991; (2) allow V.B.N. to intervene in the circuit court action; (3) appoint her a guardian ad litem to represent her interest; and (4) consider her request for additional blood testing; or (5) permit the results of the original blood test to be presented in the trial of the case. W.Y. petitions this Court, pursuant to Ala.R.App.P. 21(e), for a writ of mandamus directing the Court of Civil Appeals to rescind its writ of mandamus directed to Judge Crespi.[1]
As we have frequently pointed out, mandamus is a "`drastic and extraordinary remedy.' Ex parte Edgar, 543 So.2d 682, 684 (Ala.1989). The writ will not issue in the absence of a `clear legal right in the petitioner to the order sought.'" Ex parte Izundu, 568 So.2d 771 (Ala.1990). Through this remedy, a petitioner may compel only the exercise of judicial discretion; he may not compel a particular result. Ex parte Ben-Acadia, Ltd., 566 So.2d 486 (Ala.1990); Ex parte Rogers, 533 So.2d 245 (Ala.1988). Consequently, discretionary acts that are based on valid factual findings are outside the scope of mandamus. Ex parte Redd, 73 Ala. 548, 550 (1883) (the Supreme Court "will command the inferior tribunal to proceed to judgment, but will not dictate the judgment he shall render"). The application of these basic principles disposes of the first four directives of the mandamus issued by the Court of Civil Appeals.
The trial judge found as a fact that V.B.N. was represented by David Emery at the time the alleged agreement was made, and that she subsequently failed to perfect an appeal within 14 days as required by the Alabama Uniform Parentage Act, Ala.Code *1178 1975, § 26-17-20. He concluded, therefore, that she was barred from participation in the action in the circuit court.
In making these determinations, the trial judge was entitled to consider the effect of a number of statutory provisions on the facts and circumstances in this case. For example, Ala.Code 1975, § 26-17-7, requires the State of Alabama to prosecute paternity actions "on relation of the complaining witness or party against the person claimed to be the father," and provides that "[t]he district attorney, special prosecutor or attorney otherwise authorized to represent the state of Alabama shall appear and prosecute all proceedings brought under this chapter." In light of this provision, the fact that successive attorneys filed notices of appearance without specific reference to V.B.N., while not irrelevant, is not particularly compelling.
Nor does the fact that no guardian ad litem was appointed compel the conclusion that V.B.N. was necessarily unrepresented in the juvenile court. Section 26-17-11 provides that if a minor child is "made a party to the action," then "he shall be represented by his general guardian or a guardian ad litem appointed by the court, if not otherwise represented by counsel." (Emphasis added.) The statute thus expressly contemplates situations in which a minor may be represented in a paternity suit without the appointment of a guardian ad litem. The trial judge could properly consider not only the styles of the pleadings and notices, but the general conduct of the parties and counsel and the overall posture of the case.
These findings of fact and conclusions of law constitute an exercise of judicial discretion sufficient to take those portions of Judge Crespi's order pertaining to V.B.N.'s rights to proceed in the case outside the scope of mandamus. The Court of Civil Appeals erred, therefore, in directing him, through its writ of mandamus, to (1) withdraw his order of April 25, 1991; (2) allow V.B.N. to be made a party to the circuit court action; (3) appoint her a guardian ad litem to represent her interest; and to (4) consider her request for additional testing.
The fifth directive imposed by the writ of mandamus issued by the Court of Civil Appeals requires the trial judge to introduce the analysis of the original blood test into evidence. It presupposes the nonexistence of an enforceable agreement precluding the use of evidence of the blood test. It is also equally applicable to S.N. and the DHR, parties still properly before the circuit court; therefore, we shall address that issue.
The transcript of the deposition, during which the alleged agreement was reached, reveals the following discussion:
"Q. [By David Emery] You've heard a lot of testimony today about different men that have possibly had sex with her?
"A. [By W.Y.] Yes, I've heard that testimony.
"Q. Has it been explained to you that your refusal to take a blood test may prohibit that from coming into court?
"A. No, it has not.
"....
"Q. Well, let me run this by youthe reason I ask you this is, I'm curious as to why you refuse to take a blood test?
"A. Oh. Oh. Why I refuse to take a blood test? Because of this: there is nothing perfect at all, and a laboratory you send anything to a laboratory, it could getgo back to your AIDS viruses. Different people that we know about and read about, that it was not their blood, that it turned out to be erroneous. That's the reason.
"Q. Let me explain this to you. You understand that by refusing to take that blood test that what [Ala.Code 1975, § 26-17-13,] says is that the court will not entertain any testimony about other men that she may have had sex with?
"A. That's your opinion of that. I don't know.
"Q. That's right. That is my opinion. But I think it is fairly clear.
"[By counsel for W.Y.] That is my opinion of the law also.
"Q. I mean ..., I don't know if I'm wandering off from asking questions, but the reason why I asked for the blood *1179 test is because the tests are scientifically valid. Now ... we are talking about a test that has the power to exclude you from being the father. Do you understand that? Notit doesn't say you are the father. It saysit has the power to say you're not the father.
"A. My answer to that would be this: any test is not valid.[2]
"....
"Q. What I'm getting at is, the test is accepted. Now, what you are saying is that they might get the wrong blood or something?
"A. Yes.
"....
"Q. Would you be willing to take a blood test if I agreed that it couldn't be used against you in court?
"....
"Q. Well, what I am saying is, if you would take this blood test, and it excludes you as the father, then we will drop the lawsuit, period. But if it comes back and it says you are the father, 99.9 percent, we will have an agreement that we can't use that in court. It can't hurt you.
"....
"A. [My attorney] will get back with you on this.
"Q. What I'm saying is, you wouldn't it couldn't hurt you.
"A. Okay."
Where evidence regarding the existence vel non of the essential elements of a contract is susceptible to more than one reasonable inference, the question must be resolved by the trier of fact. Sunnyland Mobile Homes, Inc. v. Thompson, 384 So.2d 1111 (Ala.Civ.App.1980); Clayton v. Simpson, 346 So.2d 457 (Ala.Civ.App.1977). A trial judge acting as the finder of fact cannot be compelled by mandamus to resolve the question in a particular manner. See Ex parte Rogers, 533 So.2d 245 (Ala. 1988).
Judge Crespi obviously found as a fact, based at least in part on the deposition discussion, that an agreement existed. This finding is particularly significant in light of the fact that both the referee and the juvenile court judge reached the same conclusion. A writ of mandamus is not the proper remedy through which to reverse the trial court's order, which was based on that finding.
Regarding the enforceability of the agreement, which V.B.N. also challenges, Ala.R.App.P. 47 provides:
"No private agreement or consent between the parties or their attorneys, relating to the proceedings in any cause, shall be alleged or suggested by either against the other, unless the same be in writing, and signed by the party to be bound thereby; provided, however, agreements made in open court or at pretrial conferences are binding, whether such agreements are oral or written."
Id. (Emphasis added.) Consistent with the long-established practice of the courts of Alabama, Rule 47, which was former Supreme Court Rule 20, expressly recognizes the validity and enforceability of oral agreements made in connection with litigation under circumstances amounting to "open court."
The rationale for the rule upholding oral agreements was examined by this Court late in the last century. In Prestwood v. Watson, 111 Ala. 604, 608, 20 So. 600, 601 (1896), this Court explained:
"The rule [requiring a signed writing] has never been supposed to have any application to agreements or admissions made in the presence of the courtupon such agreements or admissions made verbally, every court is necessitated to act daily; the refusal to recognize and act upon them, would delay the transaction of business and entail upon counsel and parties much unnecessary labor. The purpose of the rule is to relieve such admissions or agreements from the infirmative considerations attaching *1180 to mere oral admissions of facts, imputed to the one party or the other, and to avoid the unseemly wrangles, disputes and contradictions which would ensue, if they rested only in memory. Where the agreement or admission is made in the presence of the court, it is without the purpose or reason, if not without the letter, of the rule."
(Emphasis added.) More recently, this Court further explained the open-court rationale as follows:
"New York's statute regarding stipulations is virtually identical to Alabama's. It explicitly provides for agreements made in open court. The term `open court' has been explained thusly by the New York courts:
"`Judicial proceedings in `open court', wherever held, including chambers of course, and informal conferences in chambers or robing rooms or even a courtroom are manifestly disparate. Even before full reporting in open court became universal in courts of record, the formality, publicity, and solemnity of an open court proceeding marked it as different from the preliminary atmosphere attached to informal conferences elsewhere. Moreover, the proceedings in open court would always have some formal entries, if only in the clerk's minutes, to memorialize the critical litigation events. In the latter days, it has also meant an available full transcript beyond dispute and the fallibility of memory.'

"In re Dolgin Eldert Corporation, 31 N.Y.2d 1, 334 N.Y.S.2d 833, at 840, 286 N.E.2d 228 at 233."
Anonymous v. Anonymous, 353 So.2d 515, 518 (Ala.1977) (emphasis added).
These cases, in addition to emphasizing important policy reasons for upholding agreements between litigants, indicate that the primary concern is for verification of the existence and the terms of alleged agreements; hence, the rationale for upholding oral agreements under circumstances in which they are sufficiently solemnized and memorialized to preclude the "unseemly wrangles, disputes and contradictions which would ensue, if they rested only in memory." Prestwood, supra. The spirit of the rule is, therefore, satisfied where an agreement, made in the presence of the parties and counsel, appears in a deposition transcript.
The agreement in this case was made in the process of the formal deposition of the defendant and the mother of V.B.N., one of the two relators in the action. Counsel for all the parties were present. The conversation was transcribed verbatim by the court reporter, who had been employed for that specific task. We hold that under these facts, the trial judge did not abuse his discretion in giving effect to the agreement. The Court of Civil Appeals erred in directing him, through its writ of mandamus, to admit evidence of the blood test in violation of the agreement. Accordingly, W.Y.'s petition for a writ of mandamus to the Court of Civil Appeals is due to be granted.
WRIT GRANTED.
HORNSBY, C.J., and SHORES, ADAMS, HOUSTON and INGRAM, JJ., concur.
MADDOX, STEAGALL and KENNEDY, JJ., dissent.
KENNEDY, Justice (dissenting).
The majority opinion never addresses this case's dispositive issue, which is whether David Emery represented V.B.N. in the proceedings. The Court of Civil Appeals addressed that issue properly and determined that he did not. It is absolutely inconceivable that Emery in any manner represented V.B.N., especially considering that his actions in making the agreement with W.Y. would, according to even his own words, "only help" W.Y., not V.B.N. I could write a longer and more intense dissent explaining in detail my position in this case, but there is little point in doing that, because the Court of Civil Appeals held what I would hold and the majority has rejected that holding. A great injustice may be inflicted on V.B.N. in the underlying action as a result of the majority's resolution of W.Y.'s petition for mandamus, *1181 although there is a strong and very compelling argument based on general principles of law and in particular on Ex parte Martin, 565 So.2d 1, 3 (Ala.1989), that the judgment in the underlying action is not binding on V.B.N. if she is not a party to it. Our legal system seeks to obtain justice, which the Court of Civil Appeals did obtain with its opinion. Today's majority decision is unjust. Accordingly, I strongly dissent.
NOTES
[1] This Court's review of the issues presented arises under Rule 21(e)(1), which provides:

"A decision of a court of appeals on an original petition for writ of mandamus ... may be reviewed de novo in the supreme court.... If an original petition has been granted by the court of appeals, review may be had by filing in the supreme court a petition for writ of mandamus ... directed to the court of appeals, together with a copy of the proceedings in the court of appeals, including the order granting the writ."
(Emphasis added.)
[2] At approximately this point in the proceeding, S.N. left the room and was absent during the remainder of the deposition.