ERIC G. LAUTENBACH,           )
                             )
        Plaintiff/Appellee,   )        Appeal Nos.
                             )        01-A-01-9710-CH-00595
v.                           )        01-A-01-9703-CH-00098
                             )
                             )        Cheatham Chancery
ROBBIN L. LAUTENBACH,         )        No. 7783
                             )
        Defendant/Appellant.  )
                             )

**FILED**

May 25, 1999

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

COURT OF APPEALS OF TENNESSEE

APPEAL FROM THE CHANCERY COURT FOR CHEATHAM COUNTY

AT ASHLAND CITY, TENNESSEE

THE HONORABLE LEONARD M. MARTIN, CHANCELLOR

MARY ANNE KEVIL
Bellevue Professional Center
237 Old Hickory Blvd., Suite 201
Nashville, Tennessee  37221-1353
        ATTORNEY FOR PLAINTIFF/APPELLEE

CHARLES C. MORROW
Charles C. Morrow & Associates
3221 Nolensville Road, Suite 102
Nashville, Tennessee  37211
        ATTORNEY FOR DEFENDANT/APPELLANT

AFFIRMED AND REMANDED

WALTER W. BUSSART, SPECIAL JUDGE

# OPINION

This case involves a post-divorce custody decision in which the lower court changed custody of a minor child from her mother to her father. The child's mother has appealed raising three issues. We affirm the decision of the trial court with regard to each issue.

## I.

Eric Lautenbach ("the Father") and Robbin Lautenbach ("the Mother") were divorced in 1994 at which time they entered a Marital Dissolution Agreement ("MDA") which provided that they have joint custody of their minor child, Amanda ("the child"), with the Mother being the primary custodian. However, the divorce decree and MDA were silent as to visitation, and in 1996, the Mother filed a petition requesting the court to set definite visitation for the Father. The Father then filed a counter petition to change custody of the child to him. In addition, the Father moved for temporary visitation.

At the close of the hearing, both attorneys submitted proposed orders. The order submitted by the Mother's attorney was filed by the court on June 21 1996 ("the June 1996 Order"). However, on September 6, 1996, the court filed a second order nunc pro tunc which was the order originally submitted by the Father ("the September 1996 Order"). Thereafter, the court issued an Order of Correction in which it stated that the latter order replaced the former June 1996 Order, since the former was entered in error. In this latter September 1996 Order, which was entitled "Temporary Order," the court directed that the Mother have temporary custody of the child and set definite visitation for the Father. The order stated that "this case shall be reviewed after July 12, 1996, upon motion of either party."

After the Mother filed a Motion to Amend Temporary Order on Visitation and for Increase in Child Support, a hearing was held and custody was modified. This order ("the November 1996 Order"), which was also entitled "Temporary Order," changed custody such that the Father had primary custody

of the child with the parties continuing to have joint legal custody. The order set the visitation with the Mother at every weekend except the fifth successive weekend. The court reserved the issue of child support.

Finally, the Mother filed a petition to return the custody of the child to her. After a hearing, the court entered an order on June 6, 1997 ("the June 1997 Order") finding that the Father should be awarded sole custody of the child, that visitation as previously ordered should remain in force, and that the Mother should have a minimum of four weeks extended summer visitation. In addition, the court ordered that the Mother should pay $200 per month child support to the Father. The court decreed that the June 1997 Order shall be final in all of its terms.

## II.

In her first issue, the Mother contends that the trial court erred in entering the September 1996 Order some 77 days after the entry of the initial June 1996 Order. The Mother's position is that the court did not have the authority to do this since the first order became final 30 days after it was signed when no appeal was taken from this order. She maintains that the order can only be changed by either party's petition to the court for a change in custody, a process which gives the other party time to prepare and respond.

First, we point out that by issuing the September 1996 Order, the court was not changing its opinion but rather conforming its order to reflect what it had intended originally. As stated, the court entered an Order of Correction clarifying that the June 1996 Order was entered in error. Rule 60.01 of the Tennessee Rules of Civil Procedure provides that "[c]lerical mistakes in judgments, orders or other parts of the record, and *errors therein arising from oversight or omissions*, may be corrected by the court at any time on its own initiative or on motion of any party and after such notice, if any, as the court orders." (emphasis added). As the court stated prior to the enactment of the rules:

All courts have the right, and it is their duty, to make their

> records speak the truth, and a court, therefore, in a proper
> case, of its own motion, may order a nunc pro tunc entry to
> be made; . . . And the lapse of time between the
> announcement of judgment and the making of this motion is
> of no importance; that which is important is, that the proof be
> clear and convincing that the judgment which it is sought to
> have entered is the one pronounced in the cause.

*McCown v. Quillin*, 48 Tenn. App. 162, 175, 344 S.W.2d 576, 582 (1960). From the trial court's Order of Correction, it is clear that the court's error in signing the June 1996 Order arose from oversight or omission. *See Pennington v. Pennington*, 592 S.W.2d 576, 578 (Tenn.App.1979). Therefore, pursuant to Rule 60.01, the court had the authority to issue the Order of Correction and to enter the September 1996 Order nunc pro tunc.

In actuality, the two orders are almost identical in substance. One order provides that the Father enjoy his one-full-weekend-per-two-months visit with the child during the even months beginning in June of 1996 and that the Mother enjoy hers during the odd months beginning in July, and the other order provides for the converse. However, it seems that both proposed orders embody a singular ruling by the trial court. For that reason, the Mother's insinuation that she was not given time to prepare and respond before this change is non-sensical. The court was not re-evaluating its decision and therefore did not need new proof or argument on behalf of the parties.

Finally, the Mother challenged the timing of the court's corrective action asserting that the order became final after 30 days. Rule 60.01 provides that the court may correct errors "at any time." Therefore, the court was justified in entering the September 1996 Order some 77 days following the erroneous entry of the initial order.

## III.

Next, we address the Mother's contention that the trial court erred in changing the custody without showing that the Mother was an unfit and improper person to have custody of the child. In the November 1996 Order which

modified custody, the court summarily stated that "the temporary order of September 6, 1996 should be modified." In the June 1997 Order, the court stated only that custody should remain with the Father. However, the court's pronouncements from the bench indicate that it made the requisite finding for a modification of custody.

It was not necessary for the court to find that the Mother was an unfit and improper mother. Rather, courts are empowered to modify custody "as the exigencies of the case may require." Tenn. Code Ann. § 36-6-101(a)(1)(1991). The party seeking to change custody must show "(1) that the child's circumstances have materially changed in a way that could not have been reasonably foreseen at the time of the original custody decision, *see Smith v. Haase*, 521 S.W.2d 49, 50 (Tenn.1975); *McDaniel v. McDaniel*, 743 S.W.2d [167, 169 (Tenn.App.1987)], and (2) that the child's best interests will be served by changing the existing custody arrangement." *Adelsperger v. Adelsperger*, 970 S.W.2d 482, 485 (Tenn. App.1997). "'Changed circumstances' includes any material change of circum-stances affecting the welfare of the child, including new factors or changed conditions which could not be anticipated by the custody order." *Blair v. Badenhope*, 940 S.W.2d 575, 576 (Tenn.App.1996) (citing *Dalton v. Dalton*, 858 S.W.2d 324 (Tenn.App.1993)).

Review of findings of fact in child custody cases "shall be de novo upon the record of the trial court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise." Tenn. R. App. P. 13(d); *Hass v. Knighton*, 676 S.W.2d 554, 555 (Tenn.1984). In the case at bar, the prior custody arrangement as set out in the MDA was that the parties had joint custody with the Mother as the primary custodian. We find that the evidence does not preponderate against a finding that circumstances changed such that the best interests of Amanda Lautenbach were served by modifying the custody arrangement so the Father was the primary custodian. Both parents were custodians; the court just changed the primary custodian.

At the November 1996 hearing, the Mother testified that she was

having problems with the child. She could not make the child listen, obey, take directions or "settle down" to do her homework. The Mother said that her own mother, Mary Haynes, assisted her in helping the child with homework because the child minded Ms. Haynes better. At the hearing Ms. Haynes testified that, after being absent from the child for six weeks, she noticed a big difference in the child: the child "pulls tantrums, she pouts, she won't mind. She sits and she'll grab the door -- go through the room and slam the door. She'll tear up things in her room and she comes back out and she's sorry, but then she starts all over again. . . . She do[es]n't mind her mother, she doesn't mind me." Ms. Haynes stated that this behavior was particularly bad when the child returned from visiting her Father. The Father testified that the child exhibited none of these behavioral problems when she was in his custody. He claimed that since the child's birth, the child's Mother has had problems controlling and disciplining her and that the Mother has consistently requested that he control and discipline her.

In addition, there was proof that the child was not doing well in school. The Father testified that the Mother reads at a fourth grade level and that she has difficulty comprehending many things. He expressed his concern that the Mother was "trying to teach [the child] to read and write and do mathematics, when she has a real hard time doing it herself." The Mother indicated that she was able to give adequate help to the child with her homework. However, it is apparent that the judge was concerned about the Mother's ability to help the child in this area. It was after this hearing that the court issued the Temporary Order changing custody to the Father. At the close of the hearing, the court made the following statement:

> I'm simply trying to find something that will work better for the child than what the two of you are telling me will work. Neither one of you are telling me that this child is doing well and this child is happy, you're both having this problem.
> So, let's try something different; that something different is going to be that the child is fixing to go live with her father.

At the May 1997 hearing held upon the Mother's petition to return

custody to her, the Mother testified that when the child was with the Father, she was not given breakfast nor was she allowed to talk to the Mother on the phone. The child verified that she did not have breakfast every morning while living with her father. The Father said that he and the child ate breakfast daily until the past few weeks when the child began to stay in bed causing them to run late. When this happened, the Father sent extra snacks to school with the child.

The Father testified and the Mother admitted that she would not talk to the Father about the child's behavioral problems. Despite the fact that the child was having problems in school and had been diagnosed with Attention Deficit Hyperactive Disorder, the Mother was uninterested in the Father's plan to investigate the possibility of enrolling the child in a private school. She stated that she did not want to hear anything about this school. The Mother was candid about the fact that she had been emotional in front of the child with regard to the child's change of custody to her Father and that this had upset the child.

There was testimony from both the child's grandmother, Ms. Haynes, and a friend of the Mother's that the child had a bruise which she claimed came from being spanked by the Father. The Father denied having bruised the child in this way. Regarding this matter, the child's testimony was ambiguous. While she asserted that her Father spanked her when he was drinking, she told the court that her father punishes her by putting her in time-out. Moreover, she testified that a bruise on her arm from falling off the swing set was her first bruise. The depo-sition of Todd Love, a social counselor from DCS, was entered into evidence. After the Mother filed her complaint, Mr. Love interviewed the child, concluded that no abuse had taken place, and closed the investigation. It was clear that the child's desire was to live with her Mother. When asked the reason for her preference, she stated that she has more fun there.

Following the June 1997 hearing held upon the Mother's petition to return the custody of the child to her, the court stated its finding as follows:

> The court finds that as between these two parents that the best interest of this child is served by leaving the child with the father. This father seems to be, based upon the testimony in the Court and observation of the witness, this

> parent is better equipped to do a better job of providing the things this child needs. There is no question in the Court's mind about the love the mother has for the child. . . . The problem is [the child] is not doing well under the mother's full time supervision.
>
> And the father, it seems to the court, has a much better, more reasonable approach to the welfare of this child.

The court then entered a final decree awarding sole custody of the child to the Father.

The evidence supports a finding that circumstances had materially changed for this child. She was not doing well in school, either academically or behaviorally. In addition, she was exhibiting poor behavior in the company of her mother and maternal grandmother. There was proof that the Father was more capable of controlling the child as well as of assisting her with her school work. In addition, the evidence indicated that the Father was more willing to address the child's diagnoses of Attention Deficit Hyperactive Disorder and her consequential potential need for a different school. In light of these changed circumstances, the court made the determination that the best interests of the child would be best served by placing her in the custody of her father. We find that the evidence does not preponderate against this conclusion.

## IV.

Finally, the Mother argues that the trial court erred in changing the custody of the child following a proceeding that was held upon a motion to modify visitation. A month after the September 1996 Order was entered, the Mother filed a motion to modify visitation and increase child support. Without having filed any response to the Mother's motion, the Father came to the November 21, 1996 hearing. The Mother claims that there was no mention of changing custody and that she was not prepared to defend on the custody issue.

We agree that the record indicates that there was no formal notice that custody would be an issue at the November 21, 1996 hearing. Nor was custody the reason the parties were initially in court. When the judge asked, "[w]hat are

we here on?", the Mother's attorney expressed his client's desire to modify visitation and increase child support. The Father's attorney requested that the child be appointed a guardian and then stated that the child had been exposed to some situations: "we don't know whether they are significant enough for the court to have another full hearing on the issue of primary custody."

However, during the November 1996 hearing, when asked by the court what it should do, the Father stated that if the child were with him during the week, he could help her study. Indeed, by the evidence the parties presented at this hearing, it is clear that, once into the hearing, they became aware that custody was the issue and put on evidence of the child's circumstances. Furthermore, as outlined above, the trial court did not make its modification of custody final until after the second May 1997 hearing which was held for the sole purpose of determining custody. Therefore, in light of the particular circumstances of this case, we find that the Mother had adequate opportunity to prepare and present evidence on the custody issue.

We are aware that a parent's right to custody of his or her child is protected by the United States Constitution. *U.S. Const.* amend. XIV. A parent must have notice of the issues which the court will decide at hearings involving his or her child in order to adduce evidence. *Thorne v. Thorne*, 344 So.2d 165 (Ala.Civ.App.1977). However, here the court never granted the Mother sole, permanent custody. Instead, there were a series of hearings where custody remained an issue for review. We do not believe that, under these circumstances, the Mother's constitutional right was violated.

V.

The decision of the trial court is affirmed in all respects. Pursuant to Rule 60.01, the court had the authority to issue its Order of Correction and to enter its September 1996 Order nunc pro tunc. Furthermore, we uphold the court's subsequent decision to modify custody of the child to the Father based upon the two hearings that took place. The costs of appeal should be divided equally between the Mother and the Father.

_____
WALTER W. BUSSART, SPECIAL JUDGE


CONCUR:


_____
HENRY F. TODD, PRES. JUDGE, M.S.


_____
BEN H. CANTRELL, JUDGE